## Allen's Estate.

The delivery of possession of part of the property in compliance with a parol contract for the sale of land, is not such an execution of it as will take it out of the operation of the statute of frauds and perjuries.

APPEAL from the decree of the Orphans' Court of *Juniata* county, settling the administration account of James Thompson, administrator of David Allen, deceased.

The facts of the case, which are fully stated in the opinion of the court, gave rise to the question, whether the delivery of the possession by the vendor of part of the property sold by a parol contract, was such an execution of it as would take it out of the operation of the statute of frauds and perjuries. If it was, then the administrator would be chargeable in his account with the price of the land, and the widow of the intestate be entitled to the one-third of it as personal property. But, if it was not, then the administrator would not be chargeable.

The court below (Hepburn, President) decreed that the administrator was not chargeable.

*Reed*, for appellant.
*Watts*, for appellee.

The opinion of the Court was delivered by

KENNEDY, J.—Four exceptions have been taken to the decree of the court, but the second is the only one that has been insisted on and argued before us. And indeed it is the only one, in regard to which, we have any evidence given us on our paper-books, that will enable us to decide on the correctness of the opinion of the

[Allen's Estate.]

Orphans' Court.   While the account of the administrator was be-
fore the Orphans' Court, it was referred by the court to auditors,
who made a report to the court accompanied by a statement of
the account as altered and corrected according to their view of the
whole matter.   Among other things, they charged the accountant
with the sum of $773, being money, as it was alleged, which had
become payable to the intestate, and the accountant as his admin-
istrator, upon a parol or verbal sale made by the intestate about
three months before his death, of a house and lot of ground, situ-
ate in Taylors' town, in the county in which he resided, and a lot
of ground containing from eight to ten acres adjoining said town,
to a certain George Jacobs.   In order to establish the sale, and
the terms of it, the testimony of three witnesses, beside that of the
purchaser, was taken.   None of the witnesses, however, except-
ing the purchaser, knew or could state the terms of the contract.
The most that any one of them could state was, that the intes-
tate, before his death, said he had sold the property, but for what
price, and how or when it was to be paid, no one could tell, ex-
cept the purchaser himself.   The purchaser, however, testified,
that in the latter end of May or beginning of June 1839, he made
a verbal agreement with the intestate, whereby the latter agreed
to sell to him the house and lot, and the eight or ten acres of land
for the price of $800, $400 of which was to be paid on the 1st of
April 1840, $150 on the 1st of April 1841, $150 on the 1st of April
1842, and the remaining $100 on the 1st of April 1843.   That he
should take possession of the eight or ten acres of land immedi-
ately ; that he accordingly did so, put a fence around it, and cul-
tivated it by raising a crop of Indian-corn thereon that same year ;
that he was not to have the possession of the house and lot until
the 1st of April 1840.   That their agreement was to have been
reduced to writing, and signed by them, when the intestate came
into the town of Mifflin, which was to be shortly thereafter.   But
he never came, and died in August 1839, without any agreement
being reduced to writing between them.   Jacobs also testified that
he never had possession of the house and lot during the lifetime
of the intestate ; but after the death of the intestate his heirs
agreed to sell and convey the house and lot and the eight or ten
acre lot of land to him for the same price, payable in the same
manner as agreed on between him and the intestate ; and that
this latter contract had been carried into execution between him
and the heirs.

   The intestate left a widow surviving at his death, who died on
the 28th of February 1840.   The contest here is between the
heirs of the intestate, who claim that the house and lot of ground,
and the eight or ten acre lot of land descended to them as part of
his real estate upon his death ; and the personal representatives of
the widow, on the contrary, who claim that there was a conversion
of the property by the intestate, in his lifetime, into personal estate,

[Allen's Estate.]

and that the widow became entitled to one-third of it absolutely. The court below decided in favour of the heirs, by directing the money charged against the accountant, by the auditors, on account of the agreement made by the intestate for the sale of the house and lot and eight or ten acre lot of land, to be stricken out of the account. From this decision of the court, the personal representatives of the widow have appealed to this court.

Now it is perfectly clear, that the agreement made by the intestate for the sale of the property, supposing it to have been fully proved, being merely verbal, came within the operation of the Act against frauds and perjuries, and therefore was insufficient to transfer or convert the property, unless such a partial execution of the contract for the sale has been proven, as to take it out of the Act, according to the construction which it has received in this respect. To decide this case then, it is only necessary to determine whether there was such an execution of the contract in the lifetime of the intestate as took it out of the Act against frauds and perjuries.

In the first place, it may be observed here, that no part whatever of the purchase money was paid to the intestate; nor is it conceived that payment of the purchase money, without more, would take the case out of the Act. There was a time, however, in England, when it was thought, and indeed held in some cases, that it would. _Hales_ v. _Vanderchem_, (2 _Vern._ 618); _Owen_ v. _Davies_, (1 _Vez._ 82); _Skett_ v. _Whitmore_, (_Freem. Ch. Rep._ 281); _Lacon_ v. _Mertins_, (3 _Atk._ 1); _Main_ v. _Melbourn_, (4 _Vez._ 720, 724); _Clinan_ v. _Cooke_, (1 _Sch. & Lefr._ 40, note (_a_); 2 _Story's Eq._ 64, _pl._ 760). But this doctrine appears to be in opposition to some of the early cases, and would seem to be entirely exploded by the later decisions on the subject. _Seagood_ v. _Meale_, (_Pre. Chan._ 560); _Lord Fingall_ (or _Pengall_) v. _Ross_, (2 _Equi. Ca. Abr._ 48); _Coles_ v. _Trecothick_, (9 _Vez._ 242); _Clinan_ v. _Cooke_, (1 _Sch. & Lefr._ 40, 41); _O'Herlihy_ v. _Hedges_, (_Id._ 129); 2 _Story's Eq._ 64, _pl._ 760; _Sug._ on _Vend._, ch. 3, s. 3, _p._ 107, _et seq._, (7th _Ed._); _M'Kee_ v. _Phillips_, (9 _Watts_ 86). The rule which seems now to be adopted and laid down is, that nothing shall be considered as a part performance which does not put the party into a situation that is a fraud upon him, unless the agreement is performed. _Clinan_ v. _Cooke_, (1 _Sch. & Lefr._ 41); 2 _Story's Eq._ 66, _pl._ 761; _M'Kee_ v. _Phillips_, (9 _Watts_ 86). But payment of the purchase money cannot be considered such a part performance as to place the party in that situation, because it may be repaid with interest; and then the parties will be just as they were before. 1 _Sch. & Lefr._ 41, 42; 2 _Story's Eq._ 67, _pl._ 761; _M'Kee_ v. _Phillips_, (9 _Watts_ 86). And under our Act against frauds, which does not avoid a verbal executory contract for the sale of lands as the English statute does, but leaves it binding upon the parties, there is still less reason here than in England for holding the payment of the purchase

money to be such a part performance as will take the case out of the Act. For I take it, that in an action brought here by the vendee against the vendor, where the former has paid the purchase money to the latter, who is able but refuses to fulfil the contract on his part, he would not only be entitled to recover the money back, but damages also for the loss of the purchase, which might exceed greatly the amount of the interest on the money paid. 4 *Dall.* 152 ; 1 *Binn.* 450 ; *Briggs's Case,* (*Palm.* 364). But a delivery of the possession exclusively under the contract, may and has been considered sufficient to take the case out of the Act ; especially if the party let into possession has expended money in building or repairs, or other improvements ; because, under such circumstances, if the parol contract were to be deemed a nullity, he would be liable to be treated as a trespasser ; and the expenditures would not only operate to his prejudice, but be the direct result of a fraud practised upon him. In *Butcher* v. *Stapeley*, (1 *Vern.* 363) delivery of the possession without more, under the contract, was held sufficient to take the case out of the statute. Likewise, in the *Earl of Aylesford's Case*, (2 *Stran.* 783) possession delivered and held for six years under a parol contract for a lease of twenty-one years, was considered a sufficient part execution thereof to entitle the party to the benefit of the lease contracted for. See also *Pyke* v. *Williams*, (2 *Vern.* 455) ; *Lockey* v. *Lockey*, (*Pre. Ch.* 518) ; 2 *Story's Eq.* 69, *pl.* 763, *and the cases cited in note (i)*. Possession seems to have been considered sufficient in England to take the case out of their statute, on the ground that it was necessary in such case afterwards to permit the party in possession to avail himself of the contract in order to show that he obtained and held it lawfully, that is, by the agreement of the owner or vendor, and therefore ought not to be made a trespasser. To have permitted the vendor to treat and punish the vendee as a trespasser under such circumstances, would have been, as it was thought, and perhaps justly too, to have permitted the vendor to practise a fraud upon the vendee that would have outraged the common sense of mankind, and been abhorrent to every principle of justice. But as the great object of the statute was to prevent frauds, it therefore became necessary as it was conceived, in such case, with a view to carry the Act into effect according to its spirit, if not its letter, to admit the parol contract to be proved, and if established, to give effect to it in this particular. But having thus admitted it for the purpose of preventing the vendee from being made a trespasser by the vendor, it was considered that after having been admitted for one purpose there could be no good reason why it should not be rendered effectual to its full extent. *Clinan* v. *Cooke*, (1 *Sch: & Lefr.* 41) ; 2 *Story's Eq.* 66, 67, *pl.* 761.

We have, and I am inclined to think somewhat inconsiderately too, followed the decisions made in England under this statute,

[Allen's Estate.]

though our Act is different from theirs as regards the maintenance of actions for the breaches of parol contracts or sales of lands. The English statute declares " That no action shall be brought whereby to charge any person upon any contract or sale of lands, tenements, or hereditaments, or any interest in or concerning them, unless the agreement upon which such action shall be brought, or some *memorandum* or note thereof shall be in writing, signed by the party to be charged therewith, or some other person by him thereunto lawfully authorized." Our Act, however, contains no such prohibition; but merely enacts as the 1st, 2d, and 3d sections of the English statute do, that " all leases, estates, interests of freehold, or term of years, or any uncertain interest of, in or out of any messuages, manors, lands, tenements or hereditaments, made or created by livery and seisin only, or by parol, and not put in writing, and signed by the parties so making or creating the same, or their agents thereunto lawfully authorized by writing, shall have the force and effect of leases or estates at will only, and shall not, either in law or equity, be deemed or taken to have any other or greater force or effect, any consideration for making any such parol leases or estates, or any former law or usage to the contrary notwithstanding, except, nevertheless, all leases not exceeding the " term of three years from the making thereof." And moreover, no leases, estates, or interests, either of freehold or term of years, or any uncertain interest of, in, to or out of any messuages, manors, lands, tenements or hereditaments, shall at any time be assigned, granted or surrendered, unless it be by deed or note in writing, signed by the party so assigning, granting or surrendering the same, or their agents thereto lawfully authorized by writing, or by Act or operation of law." Thus our Act goes no further than to limit the operation of the contract in creating and passing an estate or interest in the lands, leaving the party who refuses to perform it liable to be sued by and to respond to the other in damages. But seeing the English Act, as well as our own, gave to the party put into possession under the parol contract for the purchase of the land in fee, an implied at least, if not an express estate at will, which was sufficient to prevent his being made a trespasser until the vendor entered upon him and gave him notice to quit, it is difficult to imagine why it should have been deemed necessary to carry the contract into complete execution in order to protect the vendee from being punished as a trespasser for having entered and occupied the land before he had notice to quit. Being made a tenant at will, at least, to the vendor, by the plain and express language of the Act, it was out of the power of the vendor to treat him as a trespasser for any thing that he did in properly using the property before the vendor by some act of his own put an end to the tenancy. But under our Act the vendee, instead of being liable to be treated as a trespasser for having taken possession of the land

[Allen's Estate.]

upon its being delivered to him by the vendor, may, upon the vendor's refusing afterwards to fulfil the contract, by re-delivering the possession to the vendor make him responsible to the full extent of all the loss that he can show he has sustained by such refusal of the vendor to perform the contract. *Bell* v. *Andrews*, (4 *Dall.* 152); 1 *Binn.* 450. We therefore had less reason for straining to avoid the fair operation of our Act than the courts in England had to evade their statute. That it was done there so as to establish a rule of construction directing the operation of their statute that cannot be altered now, except by the legislature, has been matter of regret with some of their greatest judges; because the departure from what would really seem to have been the clear design of the statute, by Courts of Equity in the application of it, is believed by some to have been the occasion of much perjury and much fraud. In *Lindsay* v. *Lynch*, (2 *Sch. & Lefr.* 5, 7) Lord Redesdale says: "I am not disposed to carry the cases which have been determined on the statute of frauds any further than I am compelled by former decisions; that statute was made for the purpose of preventing perjuries and frauds, and nothing can be more manifest to any person who has been in the habit of practising in Courts of Equity, than that the relaxation of that statute has been a ground of much perjury and much fraud. If the statute had been rigorously observed, the result would probably have been that few instances of parol agreements would have occurred; agreements would, from the necessity of the case, have been reduced to writing; whereas, it is manifest that the decisions on the subject have opened a new door to fraud, and that under pretence of part execution, if possession is had in any way whatever, means are frequently found to put a Court of Equity in such a situation, that without departing from its rules, it feels itself obliged to break through the statute; and I remember it was mentioned in one case in argument, as a common expression at the bar, that it had become a practice *to improve gentlemen out of their estates.* It is therefore absolutely necessary for Courts of Equity to make a stand, and not carry the decisions further."

And in *Forster* v. *Hale*, (3 *Vez.* 712, 713,) Lord Alvanley remarks, "I admit, my opinion is that the court has gone rather too far in permitting part performance and other circumstances to take the case out of the statute; and then, unavoidably perhaps, after establishing the agreement, to admit parol evidence of the contents of that agreement. As to part performance, it might be evidence of some agreement; but of what, must be left to parol evidence. I always thought the court went a great way. They ought not to have held it evidence of an unknown agreement, but to have had the money laid out repaid. It ought to have been a compensation. Those cases are very dissatisfactory. It was very right to say the statute should *not* be an *engine of fraud*;

therefore compensation would have been very proper. They have, however, gone farther; saying it was clear there was some agreement, and letting them prove it. But how does the circumstance of a man having laid out a great deal of money, prove that he is to have a lease for ninety-nine years? The common sense of the thing would have been, to have let them bring an action for the money. I should pause upon such a case." See also 2 *Story Eq. pl.* 766. But we have adopted the opinion here, which seems to have prevailed latterly in England, that payment of part, or even the whole of the purchase money, is not such a part execution of a parol contract, for the sale of lands, as will take the case out of our Act against perjuries and frauds; and that this effect can only be produced by an actual delivery of the possession of the land to the vendee, in pursuance of, and in part execution of the contract. *Peifer* v. *Landis*, (1 *Watts* 392); *M'Farland* v. *Hall*, (3 *Watts* 37); *Stewart* v. *Stewart*, (*Id.* 253); *Haslet* v. *Haslet*, (6 *Watts* 464); *M'Kee* v. *Phillips*, (9 *Watts* 86). I am not aware, however, of any case in England, where it has been decided that the delivery of the possession of one only of two distinct and separate parcels of land, or real estate, in pursuance of one entire contract, made by parol for the purchase of both, for which a gross sum of money was to be paid as the price of both, was a sufficient part performance to take the case out of the statute. And certainly no decision has gone so far in this state. But unless we go this length, the case before us must be considered as falling within the provisions of the Act. I do not think, however, that we would be carrying into effect the intention of the legislature, as manifested by the Act, in doing so. On the contrary, it appears to me that we have gone rather too far already, in deciding that a delivery of the possession of the whole of the land, in pursuance of the parol contract, where it forms but one entire subject matter of the same, was a sufficient part execution of it to take the case out of the operation of the Act. If this be so, we certainly ought not to go a single jot farther. That it is so, I think has been shown pretty clearly above.

Decree affirmed.