ANN BERTA LODGE, No. 42, I. O. O. F., *v.* MARTHA J. LEVERTON.

1. WIFE'S POWER OVER COMMUNITY PROPERTY WHEN ABANDONED BY HUSBAND.—It is not an open question in this court that the wife, when forced by the action of the husband to assume and fulfill the duties of a *feme sole*, or the head of the family, may exercise the rights and privileges of such position.

2. ANNOUNCEMENT OF READY—AMENDMENT OF PLEADING.—The announcement of ready, when there are questions of law to be considered by the court, implies readiness, unless the rulings of the court upon the pleadings require their amendment; and the right to amend pleadings to which exceptions have been sustained only authorizes the amendment of the pleadings held to be defective.

3. PRACTICE IN SUPREME COURT.—A bill of exceptions to the admissibility of evidence is held a waiver of objections not urged; and this court will not consider objections apparent in the record to evidence to which other objections were made.

4. INSTRUCTIONS excluding the effect of evidence, admitted for reasons not urged when the testimony was offered, should not be given. Objections to testimony must be taken when it is offered.

5. In an action of trespass to try title, where defendant has no title he cannot show in defense that plaintiff had not paid a valuable consideration for his title.

6. PAROL CONTRACT FOR SALE OF LANDS.—Tender of purchase money, making improvements by vendee, (it not appearing that vendee expended beyond rents received by him,) and possession, do not constitute such *part performance* of a parol agreement for sale of land as will justify a decree of specific performance of such parol agreement to sell.

7. See discussion of principles governing specific execution of parol contracts for sale of land.

APPEAL from Anderson. Tried below before the Hon. A. J. Fowler.

*T. T. Gammage,* for appellant.

*Reagan, Greenwood & Gooch,* for appellee.

MOORE, ASSOCIATE JUSTICE.—This suit was brought by Mrs. Martha J. Leverton, the appellee, against the appellants, in the usual form of an action of trespass to try title to an undivided half of lot No. 4, in block No. 17, in the town of Palestine, and also to have said lot partitioned between herself and the defendants, who were admitted to own the other undivided one half of the lot. The original answer of the defendants consists merely of a general demurrer and plea of not guilty.

During the progress of the case the defendants filed amended answers, in which they set up several special grounds of defense. All of them, however, were, on exceptions of the plaintiff, held insufficient, and as presenting no valid ground of defense to the plaintiff's action. But notwithstanding this ruling of the court, it appears from the bills of exceptions and statement of facts that all of these defenses were on the trial relied upon under the plea of not guilty. It is not therefore deemed important to give the action of the court upon the exceptions to the special answers of the defendants, and those upon the exceptions taken to the admissibility of evidence, and the instructions of the court to the jury given and refused, which present substantially the same points, a distinct and critical separate examination.

All of the grounds of defense presented by the answers of the defendants, or suggested by the rulings of the court on exceptions to evidence or otherwise during the trial, may be considered under one or the other of the following general propositions:

1st. The plaintiff failed to show title under which she should recover. 2d. Defendants themselves had the better title. 3d. Though defendants did not have the better title,

they had equitable rights which they could assert in this action.

Under one or the other of these general divisions we will now consider and dispose of all the questions presented by the assignments of error, in respect to all the matters complained of prior to the return of the verdict, which it is deemed necessary to notice, except the refusal to grant the continuance asked by defendants after the commencement of the trial.

1. The supposed defects in the plaintiff's title are: 1st. The plaintiff's vendor being a married woman, and her husband not having joined in the conveyance, the power of attorney and deed under which she claims were inoperative and void. 2d. Want of mental capacity in plaintiff's vendor to convey. 3d. Failure in proof of the execution of muniments of title upon which plaintiff relied. 4th. The deed to plaintiff was without consideration.

The first of these grounds of defense was presented in defendants' first amended answer, and although not so fully and distinctly presented as it might have been, we see no good reason why the court should have sustained the exceptions to it. But no injury resulted to defendants from the ruling of the court. On the trial defendants were permitted to prove the facts alleged in the answer. They thereby got the full benefit of the answer. The legal effect which might have resulted from such facts was fully met and rebutted by evidence showing the abandonment of the plaintiff's vendor by her husband long prior to the execution of the deed to plaintiff. It is not now an open question in this court, that the wife, when forced by the action of her husband to assume and fulfill the duties of a *feme sole*, or the head of the family, may exercise the rights and privileges of such position. And the validity of her acts cannot be impeached, even by parties directly interested therein, much less can strangers be heard to call them in

question. (Hays *v.* Wright, 10 Tex., 130; Fullerton *v.* Doyle, 18 Tex., 3.)

The answer alleging that plaintiff's vendor was *non compos* at the date of her power of attorney and deed, if otherwise sufficient, evidently did not come in time. It was not filed until after the parties had announced ready, and the court had acted upon the exceptions to the pleadings of the parties respectively as they then stood. The announcement of ready, when there are questions of law to be acted upon by the court, is never regarded as absolute and unconditional. It imports, however, that the parties are ready, unless the rulings of the court upon the pleadings require their amendment, and thereby a continuance by one or the other of the parties may become necessary. And although it is unquestionable that the party whose pleading is held defective is entitled to amend his pleading for the purpose of curing such defect, notwithstanding his previous announcement of readiness for trial, this only extends to curing by amendment his defective pleading previously filed, and does not authorize him, as a matter of right, to plead new and independent matter, though it is no doubt within the discretion of the court to permit him to do so. But this court will not review its action in rejecting a proffered amendment of this character, unless it clearly appears that wrong or injustice has been done thereby. If this was the ground upon which the court rejected the amended answer which we have been considering, there is nothing in the record to induce us to reverse its action. The defendants could also, we must infer, have gone into this question under the plea of not guilty, as they did as to the matter alleged in their first amended answer, if they had desired to do so.

On the trial the defendants objected to the reading in evidence of the power of attorney under which the deed to the plaintiff was made, upon the ground that the grantor was alive and within the jurisdiction of the court, and it

could only be próved by producing the grantor in court. This is evidently no valid objection to proof of the execution of such an instrument, when its execution is sought to be established by proof of the genuineness of the signature of the grantor. That the grantor is living within the jurisdiction of the court certainly does not preclude proof of the execution of a deed by proof of the genuineness of his signature, if the evidence offered for this purpose is otherwise admissible. It was also objected that the questions addressed to the witnesses and his answers were not legal, and did not lay the proper predicate. The supposed illegality of the questions and answers and want of proper predicate is not indicated in the bill of exceptions or brief of counsel. The questions and answers seem precisely those which are usual and customary when the signature to an instrument is being proven. It is quite obvious, if the proper objection had been made, that the instrument should have been proven otherwise than it was, or it should have been excluded. But it is well settled that this court can only consider such objections as were made in the court below; and as neither of those which were made were well taken, we cannot say that the court erred in overruling them and permitting the instrument to go to the jury. If the proper objection had been made to it, for aught we can say, the execution of the power would have been shown in such manner as to authorize its going to the jury.

The defendants also sought to destroy the legal effect of the instrument by instructions to the jury, in the nature of objections to the sufficiency of the proof upon which it was admitted in evidence. This was evidently not the proper time and manner of depriving the plaintiff of the benefit of it as evidence in the case. The question of its admissibility was for the court and not the jury, and could only be made when the evidence was offered *in limine.* It would have been gross injustice for the charge of the court

to have, in effect, excluded it after it was too late to bring the evidence which would have warranted its admission.

Whether the plaintiff had, in fact, paid for the land the consideration mentioned in her deed, or any consideration whatever, in no way concerned the defendants. It is not controverted that the plaintiff was fully informed of defendants' claim to the land when she took her deed; therefore, whether she has paid the alleged purchase money or not, she holds subject to whatever equitable right defendants may have. If defendants have no title, whether the deed to the plaintiff was made with or without consideration is wholly immaterial to them.

2. Did the defendants show title, either legal or equitable, to the half interest in the lot sued for?

It is not pretended that the defendants held under a deed or other instrument of conveyance duly executed and delivered to them by the party, her agent or attorney, under whom they claim. Nor do they insist that they have any contract, agreement, or memorandum in writing for the sale of the undivided half of the lot in dispute, signed by the alleged vendor, or by any one by her thereunto lawfully authorized. But the sole ground upon which they base their claim of title is a verbal contract, so far executed, as they maintain, as to warrant a degree of specific performance by a court of equity.

This presents the most important inquiry in the case, and, indeed, the only one of serious difficulty. That the full extent and bearing of the question, and the precise point which we are called upon to decide, may be seen and clearly understood, it is necessary to consider and determine the facts or acts of part performance upon which defendants' claim to a specific performance depends. In doing this it is also to be borne in mind that the matter of defense presented by this branch of the case is in the nature of a confession and avoidance. And the facts relied upon in evidence, but for our blended system of law and equity,

could only have been made available to the defendants by invoking the aid of a court of equity, in doing which they would have become the actors, and would have had to make, by distinct, clear, and specific averments, a case authorizing a decree for the performance of the contract they set up. Unquestionably, when a verbal contract, whether fully or partially executed, is relied upon in our courts, though merely by way of defense against the legal title, the laboring oar is upon the defendant, and he must make out such a case as would entitle him to a decree of title, if he was seeking it.

We do not deem it necessary to consider whether such defense may be made under the plea of not guilty or must be presented by a special answer. There was no material difference in the averments of defendants' special answers presenting this defense, to which plaintiff's exceptions were sustained, and the evidence in its support, which was submitted to the jury under the plea of not guilty. We shall therefore consider the sufficiency of the defense, whether presented by the ruling of the court on the exceptions to the answer, objections to evidence, or the instructions refused or given the jury.

The defendants allege that they made a verbal contract, by which they purchased the undivided half of the lot in controversy from Mrs. Chambers, through her agent and attorney, for the sum of two hundred and fifty dollars; that said sale by her agent and attorney was made at her instance, and after being made was approved and ratified by her, and she and her agent agreed that, as soon as it could be conveniently done, she would execute and deliver them a deed for the same, and that defendants were placed in possession of the lot by her agents, and were still in possession under said contract; that about four months subsequently to the making of said contract and entering into possession, they tendered the purchase money to Mrs. Chambers' duly-authorized attorney in fact, and demanded

a deed for the half lot so purchased by them, when said agent refused to receive said money so tendered or to give them a deed; and that defendants had made permanent and valuable improvements upon the lot; but the specific character of the improvements or their value, or whether any of them were made before the virtual repudiation of the contract by the vendor in refusing to receive the purchase money and make title, is not alleged. Unquestionably, if a verbal contract is to be enforced upon the ground of improvements made by the purchaser, the time and circumstances under which the improvements were made, and an approximate estimate at least of their value, should be shown. The purchaser cannot, with any show of equity, ask a specific performance of the contract merely by reason of improvements, after he is advised that the contract, is repudiated and will not be carried out by the other party. If he could, the objection which has been urged against decreeing specific performance of parol contracts, even where improvements have been made on the faith of the contract, and with the belief that it would be carried out, that it is a rule by which parties may be improved out of their estates, would certainly be well taken. Nor can it be maintained that any character of improvements or repairs made on the premises, of however little value, will entitle the purchaser to have the contract enforced. (Wills *v.* Stradling, 3 Ves., 378, note *a;* Frame *v.* Dawson, 14 Ves., 386; 2 St. Eq., § 764; Browne St. Fraud, 488.)

If we look to the evidence as to the improvements, it places the defendants in a still worse position than does the averments of their answer. The testimony is as indefinite as the answer as to the time when the improvements were made. But it clearly appears that all of them were paid for out of the rents of the property. And this demonstrates that all of them, except of a very trivial character, and such as would usually be made by a cotenant, as was the defendants' and the plaintiff's vendor

at that time, or even by a mere tenant, were not made until after the refusal of the vendor to carry out the contract made with her agent. It is well settled, when the purchaser has been fully compensated for his improvements, or has gained more by his possession than he has expended in improvements, they will not avail him as a ground for specific execution. (Wack v. Sorber, 4 Wheat., 387; Eckert v. Eckert, 332; O'Reily v. Thompson, 2 Conn., 271.)

The tender of the purchase money certainly cannot be insisted upon as a part performance of the contract, which will authorize the interpretation of the court. No case has been cited, and we have found none which intimates that relief can be had on any such ground. To so hold would be in effect to say the refusal to carry out the verbal contract, upon which the statute says the party shall not be charged, gives a court of equity the right to enforce it, which would be manifestly absurd.

If, then, neither improvements such as were made by defendants nor tender of the purchase money support defendants' claim of title by their verbal contract, they are forced to stand upon delivery of possession of the undivided half of the lot, they owning at the time the other half, and if it is not sufficient, then defense must fail.

Will the delivery of possession of land under a verbal contract authorize a decree of specific performance in favor of the vendee? Counsel have argued this question as if it was definitively and conclusively settled by an unbroken series of decisions in this court, beginning under the Republic and ending with a case decided during our last term at Austin. Looking at the question from what we may suppose to have been the standpoint of counsel, that the alleged improvements were of such a character as to aid their demand of a specific execution, on the ground of part performance of the contract by delivering of possession, his conclusion is not to be controverted. But cer-

tainly none of the cases to which we are referred support the proposition that bare possession, under a verbal contract for the sale of land, will warrant a decree of specific performance of the contract on the application of the purchaser. We believe that we have examined every decision which has been made by this court bearing on the question, and if it has been so decided in a single instance it has escaped our observation. Nor have we found even an intimation, in any, of the numerous cases on the subject of specific performance of verbal contracts for land, that such a proposition, if before the court, would have met its approval. The absence of any such decision or intimation is strongly persuasive that the contrary has been regarded by the bar and bench as the recognized rule in this State.

We are fully aware that it is said, by commentators of the greatest learning, and not without the sanction of adjudged cases in courts of the most pre-eminent authority, that possession alone is such part performance of the contract as to authorize its enforcement. That it is sufficient to warrant a decree for the performance of the contract, is laid down by a standard work on the statute of frauds, in the following plain and unmistakable terms:

"And it is well settled that possession alone, without payment or other acts of ownership, is sufficient part performance of a verbal contract for land to sustain a decree for its specific execution." (Browne on St. Fr. sec. 467.)

"When the purchaser goes into possession, and rests upon that act, his claim for specific execution of the contract, the reason assigned for allowing the claim is, that if there is no agreement valid in law or equity he is made a trespasser, a position which would amount to a fraud practiced upon him by the vendor." (Id., sec. 469.)

The same rule is recognized by Judge Story. He seems to think it grows out of the necessity of the party placed in possession going into the evidence of the parol agreement for his defense against a charge of trespass, or in a

suit to account for the rents and profits. (2 Story's Eq., sec. 761.)

Other commentators accessible to us announce the rule in a more restricted and qualified manner. Thus says Chancellor Kent: " Generally it may be observed that delivery of possession is part performance. So the making of beneficial improvements may be taken as part performance." It will be noted that here it is said "the delivery of possession," not possession or taking possession, is part performance. And is it not the inference that it is part performance by the party delivering the possession? Like the other instance which he puts, making improvements is part performance by the purchaser; but surely not so on the part of the vendor. And says Fonblanque, p. 149: "So, if it be carried into execution by one of the parties, as if by delivering possession, and such execution is accepted by the other, he that accepts it must perform his part; for, where there is a performance, the evidence of the bargain does not lie merely upon the words, but upon the fact performed. And it is unconscionable that the party that has received the advantage of the contract should be admitted to say that such contract was never made."

And says Cruise: " It is said, in the Treatise of Equity, b. 1, c. 3, § 8, that if a parol agreement be carried into execution by one of the parties, as by delivering possession, and such execution be accepted by the other, he that accepts it must perform his part." And in the next section adds: " With respect to the acts which have been held to be part performance of an agreement, the general rule is that they must be such as could be done with no other view or design than to perform the agreement. Thus the delivering of possession and laying out of money has always been held to be a part performance of a parol agreement." (2 Greenl. Cruise, tit. 32, ch. 3, series 32, 33.)

And though it is said by Sugden: " So, when agreements have been partly carried into execution, the court will de-

cree the performance of them, in order that one side may not take advantage of the statute to be guilty of fraud."

"But if possession be delivered to the purchaser, the agreement will be considered as in part executed, especially if he expends money in building or improving, according to the agreement; for the statute should never be so termed, construed, or used as to protect or be the means of fraud."

But that he intends to be understood that it is only at the instance of the party as to whom the failure to execute the contract would operate as a fraud who can complain, is clearly shown by a subsequent paragraph, in which he says: "In some of the cases it has been decided that acts done by the defendant to his own prejudice could be made a ground for compelling him to perform the agreement; but Sir William Grant held the contrary, where there is no prejudice to the plaintiff, because the ground on which the court acts is fraud in refusing to perform, after performance by the other party; but where the defendant has, for instance, paid the auction duty or purchase money, it it is no fraud on the vendor, but loss on himself, which ought not to be made a ground for a specific performance against himself." (Sudg. on Vend., ch. 3, sec. 7, par. 2, 5, and 17.)

We will extend these quotations by only one additional extract, which we make from Addison's work on Contracts. He says: "But in equity the purchaser so let into possession will be entitled, it is said, to a conveyance of the estate, and the court of chancery will compel the vendor to execute such a conveyance, notwithstanding the provisions of the statute of frauds, on the ground that there has been a part performance of the contract, and that possession having been given and accepted in fulfillment of the bargain, it would be fraudulent in either party to withdraw therefrom without the consent of the other. But the mere naked transfer of the possession of land can hardly

be sufficient to justify a court of equity in enforcing the performance of an oral contract for the purchase of the freehold and inheritance of such land, on the ground that the transfer of the possession is a part performance of such oral contract.  Acts done in performance, it has been justly observed, must be such as could have been done with no other view or design than to fulfill the particular contract sought to be enforced.  A mere change of the possession and seizin of the land is an equivocal act, open to a variety of interpretations, and affords no presumption of a contract for the sale of the fee, but rather for a contract for a lease, either at will or from year to year, or for such time or period of time as may lawfully be granted by word or mouth, and to permit a person who can show no other act done, beyond the transfer of the possession of the soil from the owner to himself, to set up and enforce an oral agreement for the sale of the fee, would practically repeal the statute of frauds, and let in all the mischief which that act was intended to guard against. (Pages 157, 158.)

These quotations, it seems to us, show that the broad and unqualified proposition which seems to be laid down by the two authors first cited is not in accord with the views entertained by the others.  Yet it is to be noted, with the exception of Cruise and Addison, all of the others from whom we have quoted are cited by Browne and Story in support of the rule as laid down by them; and in the main all of them refer to the same adjudicated cases. Many of these cases are not accessible to us.  It is impossible, without extending this opinion beyond all reasonable compass, to advert to the particular facts and points decided in such of these cases as are within reach.  We may say that we have found but one of them (Butcher *v.* Stapley, 1 Vt., 363) in which the performance of the contract was decreed at the instance of the purchaser on the bare fact of part performance by the delivery of possession,

and even this case is so briefly reported as not to preclude all doubt whether there may not have been other facts and circumstances in it. We find, it is true, the same general rule which these authors lay down announced in some of the other cases, but they were suits most generally where the vendor was seeking the execution of the contract, or, if the purchaser was the plaintiff, there were other facts besides the mere delivery of possession which clearly authorized a decree. (Kine *v.* Balfe, 2 Ball and Beatty, 343; Toole *v.* Medlicott, 1 Id., 393; Boardman *v.* Mostyn, 6 Ves., 467; Lacon *v.* Mertius, 3 Atk., 3; Gunter *v.* Halsey, 2 Ambl., 586; Morphett *v.* Jones, 1 Swanst. Ch., 172; Clinan *v.* Cooke, 1 Scho. and Lefr., 22; Harris *v.* Crenshaw, 3 Rand., 14; Shepherd *v.* Shepherd, 1 Md. Ch. Dec., 244; Owings *v.* Baldwin, 8 Gill, 337; Morris *v.* Harris, 9 Gill, 19; Pugh *v.* Good, 3 W. & S., 56; Allen's Estate, 1 W. & S., 383; Smith *v.* Smith, 1 Richd. S. C. Eq., 130; Keatts *v.* Rector, 1 Ark., 391.)

We make no question, however, that many cases are to be found in which decrees for performance have been had (as says Sugden and Sir William Grant) upon part performance by the defendant, though evidently, as they think, it is contrary to sound principle. These cases were probably decided upon the theory, which seems to have been entertained at one time in some courts, that where there was a part execution of the contract, it mattered not by which party, the statute was no longer applicable to it.

Although it is usual to say that part performance takes a case out of the statute of frauds, it is now, we believe, universally conceded that such is not the ground upon which courts of equity go in such cases. It certainly has never been contended in this court that equity can enforce such a contract upon any other ground than that of preventing fraud. And as only the party in danger of being defrauded can claim relief and protection from such fraud, we are led to the inquiry, How is it necessary to decree a

performance of the contract for the protection of the pur-
chaser upon the mere fact that possession of the land has
been given him by the vendor? It is said, as we have
seen, by those who maintain that possession is such part
performance as will warrant the court in carrying out the
contract at the instance of either party, that this is neces-
sary to protect the purchaser against a charge of trespass,
or from a suit for the rents and profits received while in
possession of the land. But is there in fact any necessity
to enforce a contract in violation of the plain letter of the
law to afford the purchaser protection against such suits,
which, no doubt, in equity and good conscience he should
have? To enable the purchaser to defend himself against
such suits, it is insisted he must give in evidence the whole
contract under which he entered. Grant it. The statute
does not preclude the court from hearing proof of this
kind, if presented for any legitimate purpose. It merely
forbids charging the party on such contract after it is
proved. And surely, if the court can, to prevent a fraud,
decree the performance of the contract, notwithstanding
the statute, it can protect the defendant on the same
ground against the consequence of acts done under it, and
at the instance of the plaintiff. Delivery of possession
might with more propriety be treated as a license to enter
and enjoy the rents and profits. And such license surely
would protect the purchaser against an action for trespass
or rents, when the contract of sale, through default of the
vendor, has not been carried out, or by reason of the stat-
ute cannot be enforced. This seems to us much more
reasonable and more consonant with the rule of proceed-
ing in equity, than to enforce the performance of the con-
tract merely to prevent one of the parties against damage,
which otherwise he might sustain from the failure of the
other to comply with its stipulations. (Sugd. on Vend.,
111; Browne St. Fds., sec. 470; Allen's Estate, 1 Watts
& S., 383.)

To say if the court should go into the evidence of the verbal contract for any purpose, it may do so to enforce it, seems to us to savor more of a pretext for enlarging its jurisdiction than its exercise within the scope of its acknowledged limits. The propriety of the enforcement of such contracts by courts of equity, under any circumstances, has always been a mooted question. And while it is not to be denied by us that it may be done in such cases as have heretofore been held by the court as authorizing it, we are unwilling to extend its limits beyond the boundaries defined by them.

We must therefore say that defendants did not show themselves entitled to a decree for the performance of their alleged verbal contract, and their defense upon this ground failed. If it had appeared that defendants would not have purchased a part of the lot unless they believed they would get the entire lot, and this was known to Mrs. Chambers, or her agents and attorneys, and on the faith and confidence that the verbal contract for her half of it would be consummated, they were induced to purchase the other half, their equitable claim to enforce the contract would have been greatly strengthened. But if such was the fact, it has not been shown so that we can notice it.

3. The defendants ask for damages, because plaintiff's deed casts a cloud upon their title, and also claim pay for their improvements. But as they failed to show title, and the improvements were paid for out of the rents, they are entitled to nothing on either ground.

The application for a continuance was properly overruled. The testimony of the absent witness was immaterial, if it was only desired to prove the verbal contract and delivery of possession of the lot to defendants, and could in no manner have affected the result of the case.

There was no error in the refusal of the court to arrest the judgment. Though the verdict is not as clear and definite as it might have been, there is no reasonable doubt

as to its true import.   The suit was for an undivided half of the entire lot.   The jury, therefore, not inappropriately regarded the entire lot as involved in the controversy, and by their verdict in favor of the plaintiff, "for one-half the land in controversy in the lot," evidently must be understood as finding in her favor for the undivided half of the lot for which she was suing.

There being no error in the judgment of which appellant can complain, it is affirmed.

AFFIRMED.