ELZA v. STATE.  (No. 325.)

(Court of Civil Appeals of Texas. El Paso.
June 25, 1914. Rehearing Denied
Oct. 7, 1914.)

1. PUBLIC LANDS (§ 173*)—LANDS OF STATE
—SCHOOL LANDS—IMPROVEMENTS—OWNER-
SHIP.

When defendant purchased certain school
lands, they were under lease from the state, and
the lessee had constructed fences of the value
of $500. Defendant acquired the lease from
the lessee before purchase, and no part of the
fences was removed by the lessee within 60 days
after the termination of the lease; but de-
fendant took and held possession of the land
from 1896 until suit was brought by the state
to forfeit the purchase in 1912. *Held*, that de-
fendant acquired title to the fences, both by
purchase and limitation.

[Ed. Note.—For other cases, see Public Lands,
Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

2. PUBLIC LANDS (§ 173*)—LANDS OF STATE—
SCHOOL LANDS—IMPROVEMENTS.

Where defendant purchased school lands,
which had been under lease, procured the lease
from the lessee, who had placed fences of the
value of $500 on the land, and these were not
removed within 60 days after the termination
of the lease, defendant was entitled to have
the value thereof counted as improvements
placed on the land by him during his subsequent
three years residence, in determining whether
he had erected on the land the statutory im-
provements.

[Ed. Note.—For other cases, see Public Lands,
Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

3. PLEADING (§ 258*)—ANSWER—AMENDMENT.

Where, in a suit to cancel defendant's pur-
chase of school land, he answered, alleging that
he had placed improvements on the land to the
value of $210.17, the court properly permitted
him to amend his answer by pleading other and
different improvements, under the rule that it
is in the discretion of the court to permit an
amendment, which does not set up a new and
different cause of action or defense, provided
it does not surprise the opposite party, at any
time prior to submission of the cause.

[Ed. Note.—For other cases, see Pleading,
Cent. Dig. §§ 765–782; Dec. Dig. § 258.*]

4. PUBLIC LANDS (§ 173*)—ACTION TO SET
ASIDE PURCHASE—PLEADING—GENERAL IS-
SUE.

In a suit to set aside defendant's purchase
of school lands, he was entitled to prove, under
his plea of not guilty, the value of all improve-
ments made on the land during the three years
subsequent to his purchase, to show the erection
of the necessary statutory improvements, though
the value proved was greater than that alleged.

[Ed. Note.—For other cases, see Public Lands,
Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

Higgins, J., dissenting in part.

Appeal from District Court, Brewster
County; W. C. Douglas, Judge.

Trespass to try title by the State against
Spencer Elza and another. Judgment for
the State, and defendant Elza appeals. Re-
versed and rendered.

Chas. Rogan, of Austin, Geo. Thurmond,
of Del Rio, and W. Van Sickle, of Alpine,
for appellant. B. F. Looney, Atty. Gen., G.
B. Smedley, Asst. Atty. Gen., Walter Gillis,
of Del Rio, and J. D. Martin, of Alpine, for
the State.

HARPER, C. J. This is an action in tres-
pass to try title brought by the appellee, the
state of Texas, against appellant, Spencer
Elza, and L. Haley, to recover certain school
lands sold to said Elza by the Commissioner
of the General Land Office of Texas. The
state, in her original petition, filed July 28,
1913, alleges in substance, the following:

(1) That prior to January 25, 1905, the
defendant L. Haley leased the lands in con-
troversy, among others in his inclosure, and
has, since so leasing same, used, possessed,
and enjoyed same.

(2) That on January 25, 1906, the defend-
ants conspired together to defraud the state
and the public school fund of the lands in
controversy for the benefit of said L. Haley,
and pursuant of said conspiracy this appel-
lant did certain things in relation to the
lands sued for, to wit:

(A) On January 25, 1905, he made, and on
the 30th filed, his applications to purchase
the first five tracts, the home tract being W.
½ of section 20, block WJG8, T. C. Ry. Co.,
the other four being applied for as addition-
al thereto, and the awards upon these tracts
were made by the Land Commissioner upon
said applications. The other seven tracts in
controversy were applied for by appellant
on May 12, 1906, by applications filed May
17, 1906, and same were awarded him there-
on as additional to his home tract (W. ½
of section 20).

(B) That the statements contained in said
affidavits to purchase (the legal affidavit for
school land purchases) were all untrue, false,
and fraudulently made in pursuance of said
conspiracy. That in purchasing said land
appellant in fact did not purchase the same
for himself, but for his codefendant, L. Ha-
ley, and he was acting in collusion with Ha-
ley in making said purchases, for the pur-
pose of perpetuating the range of said Haley,
and the defendant Haley had paid the one-
fortieth of the purchase price and the inter-
est payments for said lands.

(C) That in pursuance of said conspiracy
appellant pretended to lease said lands by
certain described written leases, but in fact
said leases were for the purpose of giving
said Haley complete control of said lands,
and to cover up the real facts.

(D) That appellant never resided upon the
home tract, or any of his additional lands,
as by law required.

(E) That appellant never placed upon said
lands the improvements required of purchas-
ers of school lands under the law governing
their purchase.

(F) That the Land Commissioner forfeited
the sales to appellant on or about October 2,
1907, and thereby and by reason of appel-
lant's failure to reside on the lands and im-
prove the same, as by law required, and by
reason of the conspiracy and fraud alleged
in the purchase of same, the lands were for-

feited to the state, and she was entitled to the possession thereof.

(G) Prayer for recovery of title, possession, rents, damages, and costs.

Appellant, on September 9, 1913, filed his answer, consisting, after preliminary pleadings, of:

(1) A plea of "not guilty."

(2) Specific denials of the material allegations of plaintiff's petition seriatim.

Specifically pleading his title as follows:

(1) Settlement on home tract on December 24, 1904.

(2) That on January 27, 1905, the first five tracts were on the market, classified as "watered grazing land," and appraised at $1.50 per acre, except W. ½ of section 20, which was appraised at $2 per acre. That on said date he applied to purchase said five tracts by filing his application with the clerk and designated W. ½ of section 20 as his home tract. That he paid the one-fortieth cash required at same time and executed his obligations for the balance. That the lands were awarded to him on said applications.

(3) That he continuously resided on said lands for three consecutive years from date of his purchase, and was at the time of filing his applications an actual settler on his home tract.

(4) That on May 17, 1906, he filed his applications for the other seven tracts, and same were awarded to him as additional lands to his home tract on June 13, 1906.

(5) That he has paid and tendered payment of all interest due the state, and has placed improvements on his lands (describing them) of the value of more than $300.

Appellee filed on September 15, 1913, a supplemental petition specifically denying certain paragraphs of appellant's special answer.

On September 17, 1913, this appellant filed his trial amendment, alleging additional improvements acquired by him on certain of his lands, in order to meet objections by appellee of his making proof thereof that he had not placed such improvements, to which appellee. answered by general and special exceptions and special denial.

The trial was before the court, without the aid of a jury, upon the above pleadings, and the court, upon hearing and considering the testimony, made the following findings of fact:

(1) That the first five tracts described in the petition were applied for by appellant on January 25, 1905, and awarded to him on February 9, 1905.

(2) That the last seven tracts were applied for on May 14, 1906, and awarded June 13, 1906.

(3) That appellant was an actual settler upon his home tract (W. ½ of section 20) on the date he applied to purchase the same, and actually and continuously resided thereon for three consecutive years thereafter.

(4) That appellant settled upon and occupied said lands in good faith, and was not in collusion with any one in such purchase.

(5) That there was one mile of good barbed wire fence on the W. ½ of section 20 at the time of the award of same to Spencer Elza. Said fence was at said time of the reasonable value of $200, and had been constructed by L. Haley while he (Haley) held said land under lease from the state, and under the terms of his lease the said Haley had 60 days within which he might remove the said fence, and said fence had not been removed. I find, however, that Spencer Elza did not within 60 days, or at any subsequent time, purchase the same fence from Haley.

(6) That L. Haley, during his leasehold of the lands in controversy, constructed two miles of fence on section 40, one mile on 42, and one mile on the S. ½ of 4. That under the terms of his lease he had a right to remove same within a certain time, and such fences were not removed. That appellant did not purchase the said fences.

(7) That the Land Commissioner canceled appellant's sales on October 2, 1907, for failure to reside thereon according to law.

(8) That said lands were then awarded to R. L. Henderson, J. P. Lester, and J. W. Walker, but they did not go into possession of same until after the awards to them.

(9) That Spencer Elza placed on his home tract improvements to the amount of $210 during the three years next after his purchase and none on the additional lands.

(10) Elza paid or tendered payment of amounts due the state on account of said purchase.

Upon these facts the court finds, as conclusion of law, that appellant, Spencer Elza, is entitled to judgment unless his failure to place upon some portion of the lands within three years from the award of the home tract permanent and valuable improvements of the value of $300 had the effect of breaching his contract with the state, and, concluding that it so does, judgment was rendered for the state of Texas against appellant.

There was judgment for defendant Haley upon his disclaimer for costs, and judgment for this defendant upon his plea in abatement as to W. ½ of section 20. Appellant promptly filed his motion for a new trial, which was overruled by the court, to which ruling and order this appellant excepted and gave notice of appeal, and in due time filed his appeal bond, and the case is in this court for review upon the specifications of error assigned by this appellant in his motion for new trial.

[1] The question of sufficiency of the improvements is the only one submitted by the assignments of error. It will be noted that the court found that defendant Elza had, at his own expense, placed improvements upon the premises to the value of $210.17, and no more, but further finds that there were three

miles of fence upon the lands, which had been constructed by L. Haley, while he (Haley) held said lands under lease from the state, and that the Haley lease was transferred to Elza before purchase; and the evidence affirmatively shows that the fences in question were worth $500, and that the defendant Elza bought and paid for same. The evidence is sufficient to establish appellant's ownership of these fences by purchase and by limitation. The last possession taken under purchase was in 1906. This suit was filed 1912. The said fences not having been taken possession of by Haley within 60 days, and no suit having been filed for that purpose, Elza's ownership could not be questioned after two years, unless the state by affirmative proof could show that there was an agreement between Haley and Elza that the title to the fences should not pass (the burden being upon the state), and the court has found as a fact that there was no collusion between the parties. Appellee presents cross-assignment attacking this finding of fact by the trial court; but the evidence sustains the finding, and it is here approved. So, under the facts, defendant was the owner of the said fences prior to the expiration of his three years' occupancy.

[2] Then, conceding that the defendant did not place $300 worth of improvements upon the land after his purchase, the question arises: Could the improvements placed upon the land by Haley be counted as placed thereon by the defendant during the term of three years' residence, and constitute a compliance with the law requiring the erection of improvements? A strictly technical construction of the statute requiring improvements would be to hold that improvements should be erected after the purchase and before the expiration of three years. However, forfeitures are not favored. Salgado v. Baldwin, 105 Tex. 508, 152 S. W. 165. And appellees have referred us to no case holding that it is necessary that a purchaser under this statute shall have, in person, placed the required improvements upon the land, and none has been found after due search, but in effect the contrary has been held. Shelton v. Willis, 23 Tex. Civ. App. 547, 58 S. W. 176.

The statute provides that on the expiration of a lease the lessee shall have the right for a period of 60 days to remove any or all improvements he shall have placed upon the leased premises, defendant, being the assignee of Haley's leases, would undoubtedly have the same right, so it cannot be consistently contended that in order for Elza to comply with this provision of the law, with respect to improvements, after purchase from the state, and while he had the leasehold interest, he would be required to remove the improvements and then replace them within three years, or to erect other improvements in their stead, or even in addition thereto. Undoubtedly the primary purpose of the Legislature in using the words "shall be required within three years after his purchase," etc., was to fix the time within which the improvements should be upon the land, and the purpose of requiring the improvements was that they would be evidence of good faith of the occupancy; and this was attained by the maintenance of the improvements already upon the premises, the title to which was obtained before the purchase or at any time during the three years.

[3] The appellee contends that, because the appellant only named in his answer improvements to the value of $210.17, he could not by amended answer, after announcement of ready, set up other and additional improvements, and prove the allegations as a defense. Where the proposed amendment does not set up a new and different cause of action, it may be filed, in the discretion of the trial court, at any time prior to submission of the cause to the jury, provided it does not operate a surprise to the other party. Glasscock v. Hamilton, 62 Tex. 160; Ann Berta Lodge v. Leverton, 42 Tex. 21.

[4] Besides the evidence was admissible under the plea of not guilty, for where the defendant proposes merely to disprove the facts alleged by the plaintiff, a general denial will serve his purpose. It must therefore be held that the appellant, Elza, had in all things complied with the law, and his purchase is not subject to forfeiture by the state.

Reversed and rendered.

HIGGINS, J. I concur in the action of the majority in reversing this case, but think it should be remanded for retrial, rather than rendered. The trial court made no definite finding respecting the title to the fences constructed by Haley on a portion of the premises in controversy. He merely found that Elza did not purchase the same from Haley. The evidence respecting the title to these fences does not seem to have been fully developed, and in any event it is wholly insufficient to warrant this court in undertaking, as a matter of law, to say that the title thereto is shown to have been vested in Elza. I think the action of the majority in undertaking to dispose of the issue of title to these fences is improper, and a matter which should be referred to the trial court for determination.

I here now enter my dissent to the order finally rendering the cause.