**MINCHEW v. MURPHY.  (No. 10924.)**

(Court of Civil Appeals of Texas.  Fort Worth.  Jan. 31, 1925.)

1. Gifts ⬅49(4)—Parol gift of land must be established by clear and satisfactory evidence.

One seeking to recover title to land on an alleged parol gift must establish by satisfactory evidence a gift of the land, terms and conditions of which must be shown to be clear and free from ambiguity, and not merely an expression of an intent to make gift at some future time.

2. Gifts ⬅49(4)—Evidence held not to establish parol gift of interest in land to oil well driller.

Evidence held not to establish a parol gift to oil well driller of part interest in land on which he was drilling, but on contrary to show that relation of master and servant always existed between oil well driller and alleged

grantor, and that latter never had possession of the land.

Appeal from District Court, Archer County; H. R. Wilson, Judge.

Action by J. C. Murphy against A. P. Minchew. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Bullington, Boone & Humphrey, of Wichita Falls, for appellant.

Davenport, Cummings & Thornton, of Wichita Falls, for appellee.

BUCK, J. Appellee, J. C. Murphy, filed a suit in the district court of Archer county against A. P. Minchew and others, in form of trespass to try title to seven tracts of land in Archer county, on August 1, 1923, and on August 16 he filed an amended petition, in which he made additional parties defendants. Defendants Sweet, Keeling, Anderson, and Hearn answered by way of a general demurrer, certain special exceptions, and a general denial, and a plea of not guilty, and other defenses not necessary to notice. Defendants Albert Phelps and W. H. Street also filed an answer on October 6th, and defendant B. J. Shaw filed his answer on August 20th. Defendant A. P. Minchew filed his answer on October 31st, consisting of a general demurrer and a general denial. On November 7, 1923, defendant Minchew filed an answer in which he alleged that R. R. Robertson, A. G. Morris, and C. H. Morris were proper and necessary parties to the suit, inasmuch as the above-named parties owned an undivided interest in and to certain tracts of land described in plaintiff's petition, and prayed that the suit be continued and that the above-named parties be made parties defendant. The plaintiff thereupon dismissed his suit as to all of the defendants except A. P. Minchew, and the defendant Minchew dismissed his plea over against the other defendants, and the suit was tried with only A. P. Minchew as defendant. From a judgment in favor of plaintiff for ¼₄ interest in the leasehold interest in said tracts of land, and a moneyed judgment besides, the defendant has appealed.

The evidence shows that J. C. Murphy, an oil well driller, entered the employment of A. P. Minchew and his associates on March 6, 1923, as an oil well driller, at a compensation of $11 a day; that within a few days thereafter, the plaintiff's compensation was increased to $12 a day, and that he worked at this daily wage thereafter until the well was brought in. The plaintiff alleged that A. P. Minchew, after he began the work for Minchew and his associates, told him that he would carry him for an interest in the leasehold interest owned by Minchew and his associates within the vicinity of where

the well was to be drilled; that subsequently, at the Kemp hotel, in Wichita Falls, in the presence of Hearn, Sweet, and Robertson, he promised verbally that he and his associates would give the plaintiff a 1/64 interest in the leasehold in such lands then owned or to be owned by Minchew and his associates. This conversation occurred after the first hole had reached the paying sand, and Minchew told the plaintiff to go ahead with the well and say nothing to anybody about the prospects of getting oil, and that Minchew and his associates would give the plaintiff an undivided 1/64 interest in the leasehold then owned by Minchew and his associates, or that might be acquired by them. It might be proper to say that Minchew's testimony was to the effect that he had promised plaintiff to give him a 1/64 interest if Minchew's associates would agree thereto, but that they did not so agree. But, inasmuch as the jury found upon conflicting testimony that there were no limitations or qualifications with reference to the promise, we must accept, in support of the judgment, the testimony of defendant and his witnesses upon this point.

The appellant urges first that the trial court should have held, as a matter of law, that a purported parol gift of an interest in land unaccompanied by possession and improvements in good faith is within the statute of frauds and unenforceable. Appellee contends that, by the act of drilling the well on the land, he made valuable improvements thereon, and that this took the contract out of the statute. The plaintiff testified as follows:

"I had an agreement with Mr. Minchew that night that I would go out there and work for wages, and I went out on the night of the 6th of March. * * * I went out and drilled the well in and got $12 a day all the time, and all the time we were shut down waiting for the cement to set. Minchew paid me $12 a day straight time while I was out there. There was three weeks time while I was out there that I didn't do anything, and Minchew let my wages go on just the same. Minchew was supervising this property. He was the man his associates had put in charge of looking after the well, and I was drilling it under him. They had two other drillers out there. * * * I didn't say I put valuable improvements on this property. I said I put the well on there—that was improvements. I didn't do any more putting the well there than the other fellows who were working there. I didn't own the rig and didn't put any casing in the hole. I didn't put any cement in the hole except what Minchew bought. I didn't put any material of any kind or character on the lease. I didn't purchase a dime's worth of anything to go on the lease. The only thing I did was to work for Minchew for wages in drilling the well. The rig didn't belong to me, and I had no interest in it. Mr. Minchew paid me $12 a day. At the start he paid me $11 a day and then he paid me $12 a day up until I recovered my last check that I got after I came back from my vacation. * * * He was out there practically every day, and I had conversations with him out there after I had started on the well, and he agreed to carry me for an interest in the property. He did not state at that time what interest he would carry me for. * * * At the time Mr. Minchew made this contract with me I did not then know who all the various owners of the land were. The contract I speak of was made with Minchew in person. There were none of the other owners present at the time I made the original agreement with Mr. Minchew to go to work for him. From about the time I started to work on the land I saw some of the other owners. They would come out there where I was drilling. * * * I had been out there some three or four days before I had this conversation with Mr. Minchew about his carrying me for an interest in the lease. I cannot say how deep we had the well at that time. I suppose three or four hundred feet deep. We had not gotten in the neighborhood of any oil sand at that time when I had the conversation with Mr. Minchew, and he told me he would carry me for an interest in the property there at that time. At that time there wasn't anything said about what the interest would be. The only conversation we had at that time was he would carry me for an interest in the property he then owned, in addition to my wages of $12 a day. Nothing was said about my getting a good well. If it had been a dry hole I would have got the interest just the same."

The plaintiff then described the conversation at the Kemp hotel and the agreement on the part of Minchew, as claimed by him, to give him a 1/64 interest in the leasehold held by Minchew and his associates.

[1] The Galveston Court of Civil Appeals in Martin v. Martin, 207 S. W. 188, says:

"It is well settled in this state that it is necessary to the validity of a parol gift of land that the possession be delivered, and substantial and valuable improvements made, with the knowledge or consent of the donor, upon the faith of such gift; and that the mere taking of possession, if any in the case, and making of improvements of insignificant value, is not sufficient, especially where, as here, the value of the rents largely exceeds that of the improvements. Wooldridge v. Hancock, 70 Tex. 21, 6 S. W. 818; Eason v. Eason, 61 Tex. 225; Combest v. Wall, 102 S. W. 147; Ann Berta Lodge v. Leverton, 42 Tex. 18. It is also well settled in this state that where one seeks to recover title to land upon an alleged parol gift, as against one who holds the legal record title, he must establish by full, clear, and satisfactory evidence a gift of the land, the terms and conditions of which must be shown to be clear and free from ambiguity and doubt, and not merely an expression of an intent to make the gift at some future time. Murphy v. Stell, 43 Tex. 123; Snover v. Jones, 172 S. W. 1122."

In Atchley v. Perry, 55 Tex. Civ. App. 538, 120 S. W. 1105, writ refused, this court, in an opinion by Justice Dunklin, had a case in which the plaintiff claimed that F. M.

Phelps, deceased, had written to him the following letter:

"Dear Tom: I thought I would drop you a line and see if you wouldn't like to come up here and live. I have got a farm joins this town 640 acres, 200 in cultivation. I am going to put up a house. Got a good well and windmill, farm all fenced, finest place in the county. I will give you two-thirds of everything we can raise—hogs & cattle, mules, etc. I want to make my home with you. If we get along all right I will give you a good farm when I quit. This is the finest country in the world. Mr. Cropper is here; Will Graves and many others from Hamilton will be here. I have 2,200 acres of fine land here—am getting out 4 acres in trees around the house, all kinds of fruit. Please let me hear from you. Hoping you are all well, I remain yours truly,
                                   "F. M. Phelps."

This letter was introduced in evidence, and Archley followed it with proof that he moved upon the land after he received the letter, thus showing an acceptance of the offer contained in the letter, and farmed the land involved in the suit. The trial resulted in a judgment for the defendants, and Atchley appealed. This court said:

"Defendant introduced no testimony. Appellant contends that this evidence established a prima facie case for a recovery of the lands, and that in instructing a verdict in favor of the defendants the trial court erred. Prior to the time plaintiff went upon the land, the letter above quoted was the only offer made by F. M. Phelps to induce plaintiff to come and live upon the land. Plaintiff introduced the letter in evidence, following it with proof that he moved upon the land after receipt of the letter, thus showing an acceptance of the offer contained in the letter. Prima facie this evidence established the relation of landlord and tenant between plaintiff and F. M. Phelps, and the burden was upon plaintiff to show that subsequently F. M. Phelps made a valid and binding parol gift to him of the land in controversy."

See Hammond v. Hammond (Tex. Civ. App.) 108 S. W. 1024, writ refused; Elam v. Carter, 55 Tex. Civ. App. 649, 119 S. W. 914; Yealock v. Yealock (Tex. Civ. App.) 141 S. W. 842, writ refused; Bledsoe v. Fitts, 47 Tex. Civ. App. 578, 105 S. W. 1142, writ refused; and many other cases which might be cited.

[2] We think the evidence in this case shows without conflict that the plaintiff was paid wages for all the work he did while drilling the well, and that all the expenses with reference thereto were borne by Minchew and his associates; that the relation of master and servant, formed at the inception of the contract of employment between Minchew and Murphy, continued throughout such employment; that appellee did not have possession of the leasehold at any time, but that appellant and his associates had possession all the time. In Hooks v. Bridge-water, 111 Tex. 122, 229 S. W. 1114, 15 A. L. R. 216, the Supreme Court, speaking through Chief Justice Phillips, stated the rule to be as follows:

"From an early time it has been the rule of this court, steadily adhered to, that to relieve a parol sale of land from the operation of the statute of frauds, three things were necessary: (1) Payment of the consideration, whether it be in money or services; (2) possession by the vendee; and (3) the making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor, or, without such improvements, the presence of such facts as would make the transaction a fraud upon the purchaser if it were not enforced. Payment of the consideration, though it be a payment in full, is not sufficient. This has been the law since Garner v. Stubblefield, 5 Tex. 552. Nor is possession of the premises by the vendee. Ann Berta Lodge v. Leverton, 42 Tex. 18. Each of these three elements is indispensable, and they must all exist.

"Regardless of the disposition of other courts to ingraft other exceptions upon a plain and salutary statute which had its origin in the prolific frauds and perjuries with which parol contracts concerning lands abounded, this court has always refused to further relax the statute. We think the wisdom of its course has been justified. * * * By its requirement of payment of the consideration, adverse possession by the purchaser, and his making of valuable and permanent improvements in order for the contract to be exempt from the statute, it insures the application of the exemption only for the avoidance of actual fraud, and secures, as it should, the full operation of the statute in all other cases. Its purpose is both to prevent the perpetration of fraud and to safeguard the titles of lands. It is a rule founded in sound reason and common experience, and is fair and just."

Appellee relies, in part, on the holding in Lincoln v. Kirk, 243 S. W. 671, by this court, opinion written by Chief Justice Conner, writ of error dismissed for want of juristion. In that case Kirk and Pruitt were drilling contractors, not merely drillers working for wages. Lincoln and associates were contemplating the purchase of a lease and contracted with Kirk for him and Pruitt to enter upon the lease as drillers and drill the well. In other words, Kirk and Pruitt were to take possession of the lease and drill it under their own supervision. Therefore this court held that Lincoln and his associates parted with possession and with control and supervision of the lease by turning it over to Kirk and Pruitt. The contract was that, in addition to paying Kirk and Pruitt the usual driller's wages in consideration of their going upon the land and drilling it, to pay them one-fifth of Lincoln's undivided one-fourth interest in the oil and gas lease. Thus it will be seen that a part of the consideration for drilling the well was an agreement to pay to Kirk and Pruitt, this interest in the land, and the agreement

was made before any work had been done and before they had entered upon the lease in question. In the cited case, we held that the acts and conduct of Kirk and Pruitt, in going into possession of the leasehold interest and in paying for their interest therein, in drilling two productive wells, the latter constituting valuable and permanent improvements, took the contract out of the statute of frauds.

We conclude, without further discussing the matter, that the appellee has not shown himself entitled to recover an interest in the land, and that the judgment below must be reversed and here rendered for appellant.

There are other questions, some of which perhaps present serious questions, calling for at least a reversal of the judgment below, such as a failure of the trial court to continue the case in order to make parties defendant those who owned an undivided interest in the leasehold estate with appellant, and out of which joint interest plaintiff sought to recover; and the further question that, inasmuch as the plaintiff had settled with the other owners of interest, the associates of appellant, without limitation or privilege to continue plaintiff's cause of action against appellant alone, such settlement and dismissal relieved appellant of any liability. But we need not discuss these questions, because we feel that, upon the first question discussed, the judgment must be reversed and here rendered for appellant, and it is so ordered.