### T. J. ATCHLEY v. E. A. PERRY ET AL.

Decided May 1, 1909.

**Parol Gift of Land—Insufficient Evidence.**

In an action to enforce specific performance of an alleged parol gift of land, evidence considered, and held so wanting in probative force as to justify the trial court in instructing a verdict for defendant.

Appeal from the District Court of Ochiltree County. Tried below before Hon. H. G. Hendricks.

*S. J. Allen, Hoover & Taylor, Allen & Wantland* and *Allen & Jones,* for appellant.—The court erred in peremptorily instructing a verdict in favor of the defendants against the plaintiffs, because the evidence introduced by the plaintiffs was uncontradicted and showed that F. M. Phelps, during his lifetime, gave to the plaintiff the land in controversy and delivered possession of same to the plaintiff, and plaintiff went into possession of said lands and made permanent, costly and valuable improvements upon said lands, and expended about the sum of $1,600 in making said improvements, and thereby greatly enhanced the value of said lands, said improvements being equal in value to at least twenty percent of the value of said land, and plaintiff thereby became the equitable owner of said land, and the court should have submitted the case to the jury upon proper instructions as to the law of the case. Baker v. De Freese, 21 S. W., 963; Lord v. New York Life Insurance Co., 66 S. W., 290; Hubbard v. Hubbard, 41 S. W., 749; Thornton on Gifts, section 230; Poullain v. Poullain, 4 S. E., 91.

*Langford & Chesley,* for appellees.—In order to constitute a valid gift of realty *inter vivos* there must be an absolute transfer of the property from the donor to the donee, and where the claimant's evidence shows that he entered as a tenant, and the evidence fails to show any subsequent change of this relation, he can not prevail. Combest v. Wall, 102 S. W., 147; Murphy v. Stell, 43 Texas, 134; Newcomb v. Cox, 66 S. W., 338; 14 Am. & Eng. Ency. of Law, p. 1015, and authorities cited in note.

In order to be effective a parol gift of realty must be gratuitous and absolute, and if the doner retains dominion over the premises, or if

anything remains to be done to make the transfer complete, the gift is wholly unenforceable. Harvey v. Carroll, 72 Texas, 63; Pearson v. Pearson, 7 Johns, 25; Martin v. Funk, 75 N. Y. Rep., 134; Twenty-third St. Baptist Church v. Cornell, 117 N. Y., 601; Hamer v. Sidway, 57 Hun, 229; 14 Am. & Eng. Ency. of Law, p. 1016.

Where the donor and donee reside together at the time of the alleged gift the possession by the donee at their place of common residence is not sufficient to make a gift valid, unless there be other proof of a perfected gift. Plaintiff's evidence failing to show any proof of a perfected gift the court should instruct the jury to find against him. Newcomb v. Cox, 66 S. W., 338; 20 Cyc., 1197-98, and authorities cited under note.

Where plaintiff claimed that by virtue of a parol gift of real estate he entered into possession thereof, and on the faith of the gift made permanent and valuable improvements so that it would be inequitable not to award him title to the land, it devolved on him to show by clear, unequivocal evidence that the funds paid for the improvements belonged to him and not the reputed donor; and in the absence of such evidence the court properly instructed a verdict against plaintiff, since a court of equity would not permit a verdict in his favor to stand. Baker v. De Freese, 21 S. W., 963; Eason v. Eason, 61 Texas, 227; Wooldridge v. Hancock, 70 Texas, 18; Bradley v. Owsley, 74 Texas, 69; Murphy v. Stell, 43 Texas, 123.

In seeking to establish a parol gift of land the reputed donee may introduce in evidence prior declarations of the donor showing an intent to give, since they show quo animo the act was done; and he may also introduce subsequent declarations of the donor in the nature of admissions against interest, as tending to show he had given the property to donee. But both kinds of declarations are merely corroborative and are insufficient within themselves to divest title out of the donor and into the donee, and where plaintiff's evidence is wholly of this character, there being no evidence of any words of giving or contract to give, the court properly instructed a verdict for defendants. Mooring & Lyon v. McBride, 62 Texas, 309; Thompson v. Lynch, 29 Cal., 189; Jackson v. Cole, 4 Cowan, 487; Jackson v. Cary, 16 John., 302; Abbott's Trial Evidence (2d ed.), sec. 126, p. 199; 20 Cyc., 1247-8.

DUNKLIN, ASSOCIATE JUSTICE.—This suit was in trespass to try title, instituted by Tom J. Atchley against E. A. Perry and H. E. Chesley as executors of the last will and testament of F. M. Phelps, deceased, to recover Texas & New Orleans Railroad Company survey No. 15 of block No. 13, situated in Ochiltree County. Plaintiff's only claim of title is that F. M. Phelps made a parol gift of the land to him and placed him in possession thereof, and that he has made valuable and permanent improvements thereon, relying upon such gift. Upon conclusion of the evidence on the trial the court gave a peremptory instruction to the jury in favor of the defendants, and from a verdict and judgment in accordance with that instruction plaintiff has appealed.

The following letter was introduced by the plaintiff:

"Ochiltree, Texas, 2-21-'07.
"Mr. Tom Atchley,
    "Comanche.
"Dear Tom: I thought I would drop you a line and see if you wouldn't like to come up here and live. I have got a farm joins this town, 640 acres, 200 in cultivation; I am going to put up a house; got a good well and windmill; farm all fenced; finest place in the county. I will give you two-thirds of everything we can raise, hogs and cattle, mules, etc. I want to make my home with you. If we get along all right I will give you a good farm when I quit. This is the finest country in the world. Mr. Cropper is here; Will Graves and many others from Hamilton will be here. I have 2,200 acres of fine land here. Am getting out 4 acres in trees around the house—all kinds of fruit. Please let me hear from you. Hoping you are all well, I remain, yours truly,
                                        "F. M. PHELPS."

The land in controversy in this suit is the farm of 640 acres mentioned in the letter, and its location is as stated in the letter. At the time the letter was written plaintiff resided in Comanche, Texas, and F. M. Phelps, then about seventy-five years of age, resided in or near Ochiltree, the county seat of Ochiltree County. It does not appear that plaintiff was in any degree related to Phelps, but that he was an old acquaintance and friend of whom Phelps was fond. In June, following the receipt of this letter, plaintiff moved with his family upon the land in controversy, and he and Phelps lived together on the land until after the death of Phelps, which occurred about September 10, 1907. At the time plaintiff went upon the land about two hundred acres were already in cultivation, with fencing and other improvements thereon. Afterwards a house, barn and other improvements were erected at a cost of about fifteen hundred dollars. Plaintiff testified that these improvements were placed on the land by him and at his expense, that he put into them about one hundred dollars which he brought from Comanche and fifteen hundred dollars which he borrowed, but on cross-examination he further testified that the fifteen hundred dollars he borrowed never came into his hands, nor was it placed to his credit in bank, nor did he execute a note for it to any one, nor contract with any one for the erection of the house, nor promise to pay the fifteen-hundred-dollar loan at any definite date, nor agree to pay interest thereon. He further testified that he assisted with his personal labor in the erection of the improvements; he also cultivated a crop upon the land, a part of which had been planted when he went there, and the improvements were not entirely finished until after the death of F. M. Phelps. Testifying upon the trial, October 13, 1908, he further said on cross-examination: "I probably did tell G. S. Phelps that I was to get two-thirds of the crop. . . . I might have told G. S. Phelps that I was to get two-thirds of the crop last year and two-thirds this year, but I don't remember it."

A. W. Thurman, for plaintiff, proprietor of a hotel at which F. M. Phelps was boarding at the time, testified as follows: "I have heard F. M. Phelps speak of the plaintiff. The first time I heard him speak

of him was while he was staying at the Stephens house; that was before he came to the other town. He just said that he wanted some man to come up and live on his place; he was telling me about Atchley living with him in Hamilton, and said he was going to come up here and make a home with him. I heard him speak of Atchley several times after he came up to my hotel to live. He said he wanted Atchley to come up here and make a home with him so that he could have a place for a home; he said that he was getting ready for him to come. He said that Tom had been with him down in Hamilton County—said he would fix up a home up here and give him a piece of land. That is what he said as nearly as I can remember. He did not state where he was going to give him this home; he said he was going to fix up a home on his place; it was in that connection that he said he was going to give him a piece of land."

Alvin Teas, for plaintiff, testified as follows: "I had a conversation with Mr. Phelps in which he mentioned Tom Atchley. It was on this section mentioned, where the trees are planted out, near the house that is built up there. . . . I plowed for him and helped him set out the trees up there. We put out those trees in March, I think it was last spring a year ago. . . . It was at the time I was helping him put out those trees that I had the conversation with him; it was before any of the improvements were put on the place except the fencing. He said that Mr. Atchley had been working for him a good deal, and that he had written for him to come up here and work for him. At different times he talked about him coming up here and working for him; said he worked a good deal for him down there where he used to live; said if he did come he was going to fix up the place and build a house on it; he had some furrows plowed and some trees and flowers set out, and stakes set where the house was to be. Said he expected Atchley to come and live on the place and that he expected to have a room there of his own to go to when he wanted to; he said something about Atchley coming and taking care of him. I said he could afford to give him a quarter section of land to get him to come and take care of him, and he said he could afford to give him a section. He said he did not want Atchley to come up here unless he had some prospects of having something by reason of his coming. He said that Atchley had worked a whole lot for him down there and that he wanted to do something for him."

Boyd Jones, for plaintiff, testified: "I knew F. M. Phelps in his lifetime; knew him about two years. I had a conversation with Mr. Phelps about this place on which Mr. Atchley now lives. Mr. Phelps, Tom and myself were all that were present. He had been building a new house, and one Sunday I stopped in there. They were on the porch. I asked him who was going to live there; first I asked him who he had rented it to; he said it was not rented; said that Atchley was going to live there. He said that he, Atchley, was going to live on the place for his lifetime. He pointed to Tom Atchley and said: 'That fellow there is going to live there.' "

Bud Jordan, for plaintiff, testified as follows: "I had a conversation with F. M. Phelps along in the spring of 1906, with reference to the plaintiff, Tom Atchley. The first conversation I had, I had come to

the old town to stay all night. That was about the 20th of March. Mr. Phelps said he had written for Tom Atchley to come up here and supposed that he would come. He said that he was looking for a letter from him. After that he said Tom was in Oklahoma. I talked with him several times; I saw him nearly every day. One day he was passing my house. He would stop and talk with me nearly every day when passing there. One morning he came by while I was hitching up and I asked him if he had heard from Atchley, and he said, 'Yes.' He said that Tom had a job in a gin in Oklahoma, and that he would be up right away. Said he was going to give Tom a good chance; that Tom had staid with him. I said he was a good fellow, all right. He said he was going to give him a home. I asked him if he was going to build him a house and he said, 'No;' said that he was going to furnish the money, and that Tom was going to pay it back when he was able to do it. I saw him and talked with him after Atchley came up here. One Sunday morning I was up there on the place where Tom now lives. Mr. Phelps had a pair of mules and Atchley went up there to feed them; I went up there with him. I had started to work, and Tom said he would not go to work that morning. We went out to see how his kaffir corn had come up. While we were there Mr. Phelps came up. When he came up, Mr. Atchley told him I was thinking of going to work. Phelps said not to do it—that you didn't make any money working on Sunday. He said: 'Tom, we don't have to work on Sunday, do we?' He said that Tom ought to think a whole lot of him; said that he had given him that place. I said I would. I said, 'Have you, sure enough, given it to him?' and he said, 'Yes.' We were then on the right hand near the barn."

Defendant introduced no testimony. Appellant contends that this evidence established a *prima facie* case for a recovery of the land, and that in instructing a verdict in favor of the defendants the trial court erred. Prior to the time plaintiff went upon the land the letter above quoted was the only offer made by F. M. Phelps to induce plaintiff to come and live upon the land. Plaintiff introduced the letter in evidence, following it with proof that he moved upon the land after receipt of the letter, thus showing an acceptance of the offer contained in the letter. *Prima facie* this evidence established the relation of landlord and tenant between plaintiff and F. M. Phelps, and the burden was upon plaintiff to show that subsequently F. M. Phelps made a valid and binding parol gift to him of the land in controversy. Assuming that Phelps promised Atchley after the latter moved upon the land to give him the entire section, the undisputed fact yet remains that Phelps contracted and paid fifteen hundred dollars for the improvements which Atchley claims were erected by him, and if Phelps ever agreed with Atchley that the money paid out by Phelps for those improvements should be considered a loan by Phelps to Atchley, there was no evidence of any character sufficient to show *prima facie* that such agreement was made before the improvements were placed on the land. To the contrary, the fact that Phelps himself contracted and paid for the improvements without taking any evidence of an obligation from Atchley to reimburse him therefor, and with no agreement to repay him at any definite date and with no agreement to pay inter-

est thereon, inevitably leads to the conclusion that if Phelps agreed with Atchley to give him the land, the agreement was made after the improvements were erected.

The amount which plaintiff testified he received from his bank in Comanche and paid out in the erection of the improvements was too small in comparison with the value of the section of land, which a witness for plaintiff testified was thirteen or fourteen dollars per acre, to furnish the basis for specific performance of the alleged parol gift, and the entire evidence taken as a whole was insufficient to support a judgment in favor of the plaintiff. (Bradley v. Owsley, 74 Texas, 69; Eason v. Eason, 61 Texas, 227; Wooldridge v. Hancock, 70 Texas, 18.)

For reasons above noted the judgment of the trial court is affirmed.

*Affirmed.*

Writ of error refused.