### REEVES v. HOUSTON OIL CO. OF TEXAS.

No. 4614.

Court of Civil Appeals of Texas.
Beaumont.

April 13, 1950.

Rehearing Denied May 4, 1950.

Easterling & Easterling, Beaumont, J. R. Beck, Beaumont, for appellant.

Blades, Kennerly, Fisher & Whitworth, Houston, A. L. Bevil, Kountze, for appellee.

WALKER, Justice.

Appellant J. C. Reeves was plaintiff, and appellee Houston Oil Company of Texas was defendant, in the trial court.

This action is in trespass to try title. Plaintiff prayed judgment for title to and possession of a 30 acre tract in the G. W. Brooks League in Hardin County. Plaintiff made formal allegation of title in fee simple to this tract, and also pleaded title thereto under the 5, 10 and 25 year statutes of adverse possession.

Defendant disclaimed title to the surface estate in the land sued for; but with respect to the mineral estate in said land, pleaded *not guilty* and title under the 3, 5 and 10 year statutes of adverse possession.

The cause was tried before the court sitting with a jury; but at the close of the proof, defendant moved for an instructed verdict and the trial court sustained this motion. Judgment was accordingly rendered in plaintiff's behalf for the surface estate in the land in suit (on defendant's disclaimer), but that plaintiff take nothing against defendant as regards the mineral estate in said land.

From this judgment plaintiff has appealed, assigning 11 Points of Error for reversal.

Points 1, 2, 3 and 5 assign error to the trial court's order sustaining defendant's motion for instructed verdict; and Point 7 assigns as error that the trial court should have instructed a verdict in behalf of plaintiff. In connection with Point 7 it is to be noted that plaintiff filed no motion for instructed verdict; and therefore it cannot be said that the trial court erred in failing to instruct a verdict in behalf of plaintiff. However, Point 7 may also be disposed of on the same grounds as we dispose of the other Points just listed. The following is relevant to all of these various points and to others discussed hereinafter:

The subject matter in controversy on this appeal is the mineral estate in the 30 acre tract of land in suit.

Plaintiff's proof of title to this mineral estate is limited to evidence of adverse possession of the surface; and in order for plaintiff to recover, this proof had to show title in him to the 30 acres in suit under either or both of Articles 5509 and 5510, R.S.1925 or the former statutes now expressed in those articles. No possession of the minerals has occurred.

Defendant exhibited a paper chain of title to the land, originating with a grant to George W. Brooks by the State of Coahuila in Texas dated August 22, 1835.

This chain of title runs through the Texas Pine Land Association; by deed dated July 31, 1901, the Association conveyed its interest in the Brooks League to the defendant. Plaintiff has objected to the sufficiency of the description in a prior conveyance to this Association from John P. Irvin, dated December 11, 1891; and this matter is referred to below.

The land in suit is the South 30 acres of an 80 acre tract upon the Brooks League which is described by metes and bounds in a deed from defendant to W. S. Frazier, dated June 9, 1902. This 30 acre tract is a rectangle, the south line of which is the south line of the Brooks League. The north and south boundaries run east and west, and the eastern and western boundaries run north and south. The tract is described as being 475 *varas* wide from east to west and as being 300 *yards* long from north to south. In the deed to W. S. Frazier of June 9, 1902, defendant reserved the mineral estate in the 80 acre tract conveyed, and thus, in the 30 acre tract in suit. Of this reservation defendant now owns an undivided one-half of the oil and gas; the remainder of the reservation is owned by American Republics Corporation (under Republic Production Co.) and by Southwestern Settlement & Development Company.

The 80 acre tract described in defendant's deed to W. S. Frazier of June 9, 1902 was a part of a 160 acre tract which W. S. Frazier caused to be surveyed upon the Brooks League in 1884. There was proof that W. S. Frazier established his residence upon the Brooks League in 1873 or 1875, and that he maintained his residence at the place so fixed until his death in 1914. He claimed 160 acres by limitation, and it was the boundaries of this claim which he fixed and had surveyed in 1884. We infer that his residence was upon this 160 acre tract, and the evidence raises the issue that this residence was upon the 80 acre tract described in defendant's deed of June 9, 1902, to W. S. Frazier, just south of Black Creek.

On September 1, 1896, W. S. Frazier brought suit in trespass to try title against the Texas Pine Land Association, in Cause No. 570, in the district court of Hardin County, to recover title to and possession of 160 acres of the Brooks League. The Association was served with citation on September 14, 1896, and thereafter answered. Judgment was rendered in this cause on September 26, 1899, that Frazier take nothing and that the Texas Pine Land Association recover the Brooks League, and specifically, the 160 acres for which Frazier had sued. Frazier's petition and the trial court's judgment, both as recorded in the trial court's minutes and as recorded in the deed records of Hardin County wherein the land lies, were in proof; but the parties have summarized these documents in the statement of facts in such a way as to omit the description of the 160 acres for which Frazier sued. We infer, however, that this description included the land in suit; and the description in Frazier's subsequent suit against defendant No. 2239, styled Frazier v. Houston Oil Co., Tex.Civ.App., 161 S.W. 20, very clearly did include the land in suit. At any rate, on the face of the judgment rendered in No. 570, whatever legal interest or title W. S. Frazier had in said land was, as of September 26, 1899, the date of the judgment, vested in the Texas Pine Land Association. Plaintiff proved the citation issued to the Association in No. 570 and also proved an answer filed in No. 570 by the Association, to show that title to the Brooks League as distinguished from the 160 acres for which Frazier sued was not in litigation and that the part of the judgment in No. 570 awarding the Association title to the entire Brooks League was erroneous. Since the judgment in No. 570 was not attacked by appeal or otherwise, and since the present suit is not an attempt to set that judgment aside, we can only assume that this judgment was supported by proper pleading. Concerning this judgment in No. 570, see: Kirby v. Houston Oil Co., Tex.Civ.App., 200 S.W. 2d 246, being No. 4402 in this court, in which we held that said judgment, as against the objections raised in that suit, was valid and enforcible as regards a 19 acre tract off the north end of the 80 acre

tract, of which, as we have stated, the land in suit is a part. W. S. Frazier's deed to Kirby, on which the title of appellants Kirby in No. 4402 was based, was proved in the cause now pending, and since our holdings in No. 4402 and the application there to the land in suit appear upon the face of our opinion filed in No. 4402, we can take judicial notice of said holdings and apply them on this appeal so far as relevant. See: Montgomery v. Huff, Tex. Civ.App., 11 S.W.2d 237, pages 240-241.

Plaintiff tendered evidence, which the trial court excluded, that this judgment in Cause No. 570 was rendered in violation of an agreement between W. S. Frazier and the Texas Pine Land Association that 80 acres presumably in fee simple, would be conveyed to Frazier by the Association, and that Cause No. 570 would be dismissed. The trial court's action in excluding this proof is the subject matter of plaintiff's Point 10 which is discussed hereinafter. Other proof tendered by plaintiff, namely, the proceedings in Cause No. 2239, styled W. S. Frazier, et al. v. Houston Oil Co., which was also excluded by the trial court, shows a course of proceeding which is inconsistent with the excluded testimony concerning an agreement between Frazier and the Pine Land Association, and this matter is referred to in greater detail in our discussion of plaintiff's Point 8.

No deed to W. S. Frazier from the Texas Pine Land Association is shown. Instead, as had been stated, it was in proof that the Association conveyed its interest in the Brooks League to defendant by a deed dated July 31, 1901, and that defendant, by the deed of June 9, 1902, conveyed to W. S. Frazier the 80 acre tract mentioned above, reserving the mineral estate therein.

W. S. Frazier had continued to maintain his residence where it was (as we have stated, the proof raises the issue that this residence was on the 80 acre tract of land); and he accepted defendant's deed of June 9, 1902, and asserted title thereunder for a long period of time. For instance, it is in proof that he filed this deed for record; it was so filed on July 29, 1902, 20 days subsequent to its date. On August 2, 1904,

two years after its date, he and his wife conveyed to H. S. Kirby 19 acres off the north end of the 80 acre tract; this deed to Kirby refers to defendant's deed of June 9, 1902 to W. S. Frazier. Still later, by deed dated April 7, 1905, W. S. Frazier conveyed to his son-in-law W. T. Moulder the 30 acre tract in suit. In this deed he did not mention the defendant's deed to him, but he did describe the southwest and southeast corners of the 30 acre tract conveyed to Moulder in such a way as to identify these corners with the southwest and southeast corners of the 80 acre tract described in defendant's deed. The deed to W. T. Moulder was filed for record on October 5, 1905. There was, however, some proof that W. S. Frazier could not read.

Plaintiff holds a chain of title under W. T. Moulder to the land in suit, as follows: (1) Deed from W. T. Moulder and wife to J. L. Roundtree dated April 23, 1906 and filed for record on September 13, 1906; (2) deed from J. L. Roundtree and wife to Tom Cravey dated September 12, 1906 and filed for record on September 13, 1906; (3) deed from T. C. (Tom) Cravey and wife to plaintiff J. C. Reeves, dated July 20, 1907, and filed for record March 30, 1908.

It is to be noted that none of the deeds in the chain beginning with the deed from Frazier and wife to Moulder and ending with that to plaintiff from Cravey and wife mentioned defendant's deed of June 9, 1902 to Frazier, or the mineral reservation made in said deed. Each instrument is a conveyance in fee simple. However, it is also to be noted that defendant's deed of June 9, 1902, to Frazier had been filed for record (and, as a matter of fact recorded) before the succeeding deeds were made.

Plaintiff tendered proof which, as we have stated, the trial court excluded, that long after the Cravey conveyance to plaintiff, W. S. Frazier and wife filed suit in trespass to try title against defendant, being No. 2239 in the district court of Hardin County, to recover a specific tract of 160 acres described by metes and bounds, to which plaintiffs Frazier asserted title

by adverse possession. The excluded proof has been brought forward in the statement of facts, and its exclusion is the subject matter of plaintiff's Point 8. The excluded proof shows that Frazier's petition was filed on April 10, 1912, and that judgment was rendered on October 16, 1912, that Frazier and wife take nothing as to all of the 160 acre tract sued for except a 12 acre field which included Frazier's improvements. The 160 acre tract sued for included the land in suit, but the 12 acre tract recovered by Frazier and wife was evidently not a part of the land in suit.

We have referred to the fact that plaintiff now asserts limitation title to the mineral estate in suit by virtue of an adverse possession of the surface. It seems to be plaintiff's position that he now holds, under W. T. Moulder, a limitation title which one Henry Cravey had acquired prior to defendant's deed of June 9, 1902 to W. S. Frazier reserving the minerals, or else that Henry Cravey had disseized defendant prior to the date of that deed, although for less than the statutory limitation period prior to that date, and that in either event he would not be estopped by the reservation made in defendant's deed to Frazier.

The evidence concerning Henry Cravey's residence upon the land, and the nature and extent of his claim is indefinite and full of conflicts. There is proof that Henry Cravey went upon the 30 acre tract in suit and erected thereon a dwelling and various subsidiary structures and that he cultivated a small field thereon covering some 2 or 3 acres. There is proof that the dwelling and yard appendant thereto were enclosed by a fence, and that the field was also enclosed by a fence. The location of the various improvements, and the location of the boundaries of the yard and field, upon the 30 acre tract in suit are not shown by the proof; and this is true not only of the period of Henry Cravey's occupancy but also of the entire occupancy subsequent to Henry Cravey's departure from the land. According to the testimony of H. W. Kirkpatrick and of the plaintiff, Henry Cravey erected his dwelling while they were attending J. C. Caraway's school and Mr. Caraway fixed the date of this school as the summer of 1892. There was proof that Henry Cravey resided at this place continuously until W. T. Moulder and wife established their residence upon the land.

On the other hand, plaintiff's witness J. L. Roundtree, who was in plaintiff's chain of title and who had followed W. T. Moulder and wife in the occupancy of this land, testified that W. S. Frazier (and not Henry Cravey) had erected the dwelling and the other improvements on the land; and members of W. S. Frazier's family and relatives of Frazier fixed the date when Henry Cravey's occupancy began as being in 1897 or 1898. The proof shows that one James N. Ferguson married Julia Frazier, a daughter of W. S. Frazier, on September 17, 1896. The first child of Mr. and Mrs. Ferguson, a daughter named Maggie Belitha Ferguson, was born on September 20, 1897; this date was proved by plaintiff. The testimony of Mrs. Martha Hoke, a daughter of W. S. Frazier and the testimony of Mrs. Eliza Hare, a daughter of James M. Ferguson, was that this daughter was born to the Fergusons at the Frazier home and that at this time James M. Ferguson was either engaged in erecting a log house south of the Frazier residence and (according to the undisputed proof) across the road and only a short distance from the site of Henry Cravey's dwelling; or else that Ferguson erected this log house shortly after the birth of the daughter and then occupied the house with his family. It was also in proof from these witnesses and from others, namely, C. T. Hare, a nephew of W. S. Frazier and Charley Frazier, a son of W. S. Frazier that Henry Cravey erected his dwelling after Ferguson erected his own dwelling, or that he began to do so while Ferguson was at work on his house. We note that plaintiff's witness H. W. Kirkpatrick thought that the Ferguson and Henry Cravey houses must have been erected about the same time; he did not know which was built first. Mr. Kirkpatrick, as has been stated, said that Henry Cravey began his house in 1892, yet this was several years before Julia Frazier

married James M. Ferguson; the date of this marriage is fixed by undisputed proof.

If Henry Cravey made any use of that part of the 30 acre tract in suit which lay outside of his yard and field enclosures, this is not revealed in the proof. There is no evidence that Henry Cravey's dominion extended beyond his yard and field, which, as has been shown, covered only a small part of the 30 acre tract in suit. There is no proof that Henry Cravey made any enclosures upon the land in suit except those about his yard and field.

There is no proof that Henry Cravey paid any taxes levied upon the land or that he held under any written conveyance. The following is the only proof respecting an assertion of claim of title by Henry Cravey: (1) J. L. Roundtree testified by deposition: "Q. (7-d) Who claimed *the place* when Henry (the reference is to Henry Cravey) lived on it, and how do you know? A. Henry Cravey claimed the place while he was living there. He told me it was his place." The witness testified further: "Q. (11) Did you ever hear of any person ever claiming this 30 acre tract—except the persons who lived on it, during the many years you lived in that locality? A. No, I never heard of any person ever claiming this 30 acre tract—during the years I lived in that locality except the persons who lived on it." (2) Plaintiff testified:

"Q. That would make it in 1892 that you went to school there? A. It was 1892 or 3.

"Q. At that time did you become, or were you acquainted with this 30 acre tract—? A. Well, not particularly, I wasn't.

"Q. Did you know Henry Cravey? A. Yes, sir.

"Q. At the time you attended school there in 1892 or 3 was Henry Cravey living on this tract—? A. Yes, sir.

"Q. As to whether or not he was claiming it, what are the facts? A. Well, I supposed he did; I heard him call it home.

"Q. He called it his home? A. Yes, sir". This witness testified further: "Q.

—Was this the land that you bought the same tract—that Moulder and Henry Cravey and Tom Cravey were occupying and claiming? A. Yes, sir, the same land." (3) J. C. Caraway testified by deposition: "Q. (16-b) Did Henry Cravey tell you how he paid for this place and if so what did he tell you and when, or about when? A.—He (the reference is to Henry Cravey) and I were working in the cotton box and it come up a shower of rain, and we couldn't get the cotton up without getting it wet, and we were in the cotton box and he told me—he said 'Cary he said, I bought that piece of land and paid for it with Pine Top Checks'—the Pine Top Checks were issued after Kirby Lumber taken over from the Pine Land Association, but it was right about that time that they began to issue those Pine Top Checks—".

No deed from W. S. Frazier to Henry Cravey is in evidence; but according to the only proof on the subject, the source of Henry Cravey's claim was the said W. S. Frazier. One element of said proof is the fact that while Henry Cravey resided upon the land W. S. Frazier resided a short distance from him, and that the land in suit is very evidently a part of Frazier's 160 acre claim. Yet there is no proof of any dispute between Henry Cravey and Frazier; and when Henry Cravey departed from the land, he was succeeded in possession by a son-in-law of W. S. Frazier, namely, W. T. Moulder. Concerning the *nature* and *date* of Henry Cravey's transaction with W. S. Frazier: Proof has been stated concerning the date when Cravey's occupancy began. The testimony of J. C. Caraway quoted at the close of the paragraph next above shows that Henry Cravey's claim originated in a *purchase*, and that Cravey paid for his purchase about the *time that Kirby Lumber Company succeeded to the operations of Texas Pine Land Association.* This date was not proved. However, we note among the excluded testimony of J. C. Caraway, concerning which plaintiff has filed Point 10, a statement in answer to interrogatory 9 that Houston Oil Company and Kirby Lumber Company succeeded to the Pine Land Association's operations about 1901;

this date, which would fix the date of Cravey's payment, evidently bears some relation to the date of Henry Cravey's purchase, and thus would fix the beginning of Henry Cravey's *claim* of title many years later than the year 1897 or 1898 during which, according to some proof stated above, Cravey began the erection of the dwelling on the land. The only testimony *in the record* concerning *the date* of Henry Cravey's transaction with W. S. Frazier, whether purchase or otherwise, comes from Charley Frazier, a son of the said W. S. Frazier. Charley Frazier testified that some kind of an arrangement was made between Henry Cravey and his father, but he did not know exactly what this arrangement was. He said: "Q.— Do you recall anything about any sort of arrangement between your father and Henry Cravey with reference to Cravey building a house on that land? A. Well, I don't know just what their deal was, but I do know that Cravey got a little piece of land there from my daddy. Q. He got a little piece of land there? A. Yes, sir; whether he arranged to buy it or something, I don't know just what." He did not fix the date of this transaction, except to show that it occurred before W. T. Moulder moved his residence upon the land, but the witness was born in 1891, and he professes to speak from personal knowledge, which would inevitably throw the date of the transaction a number of years later than the year 1892, the year during which Kirkpatrick and plaintiff put the beginning of Cravey's occupancy. Concerning the *area acquired by Henry Cravey* from W. S. Frazier: The only witness who testified directly upon this point was Charley Frazier, who said that "Cravey cleared up and fenced about 3 acres; I suppose that is about what he got; I really don't know. I know what he cleared up and farmed there." And in describing his father's transaction with W. T. Moulder (who was the witness' brother-in-law) he said, in effect, that the 30 acre tract conveyed by his father to W. T. Moulder, which is the 30 acre tract in suit, was larger than that Henry Cravey had. This testimony, of course, is corroborated to some extent by the absence of any testimony showing that Henry Cravey exercised dominion beyond the limits of his yard and field.

■ It is of importance to fix the date when the 30 acre tract in suit was first defined upon the ground, either by survey or by dominion or by some other act which would enable one claiming said tract to know and be able to identify the tract upon the ground. Three tracts must be kept in mind, namely, the 30 acre tract in suit, the 80 acre tract described in defendant's deed of June 9, 1902, to W. S. Frazier, and W. S. Frazier's 160 acre claim. The 30 acre tract in suit is the south 30 acres of said 80 acre tract and is a part of the W. S. Frazier's 160 acre claim. Some uncertainty arises from the failure of the statement of facts to exhibit the description of the 160 acres sued for by Frazier in No. 570, but the proof does show the following: The southeast corner of the 30 acre tract in suit is also the southeast corner of the 160 acre claim and, of course, of the 80 acre tract, and the east and south lines of the 30 acre tract, and of course, of the 80 acre tract, run north and west from this southeast corner upon the eastern and southern lines of the 160 acre tract. This 160 acre claim was surveyed by W. S. Frazier in 1884. There is no proof of when the 80 acre tract was defined upon the ground other than the date of defendant's deed of June 9, 1902, conveying said 80 acre tract to W. S. Frazier; the inclusion of the field notes of said 80 acre tract in this deed necessarily shows that the boundaries of the 80 acre tract had been located and marked before the date of said deed, but the proof does not show when the survey occurred. Thus we must assume (and we can assume nothing more) that whenever it was that Henry Cravey went upon the land, the only tract marked and located was the the W. S. Frazier 160 acre claim, and thus, that the only corner and the only lines of the 30 acre tract then in existence were the southeast corner and eastern and southern lines. The 30 acre tract did not come into existence until the

,other three corners and the western and northern lines thereof were located. When, then, did this occur?

· First, concerning the *western* line: We have mentioned the fact that this line is a part of the western line of the 80 acre tract described in defendant's deed of June 9, 1902, to W. S. Frazier; but the proof does not show when the western line of the 80 acre tract was fixed nor who fixed it unless it be inferred that the parties to the deed of June 9, 1902, did so, about the date of said deed. June 9, 1902, then is the earliest date when it can be definitely said that the *western* line of the 30 acre tract was fixed upon the ground, and this was long after Henry Cravey's occupancy began, if that occurred in 1892 or in 1897 or 1898, and is even subsequent to the date assigned by J. C. Caraway's excluded testimony to Henry Cravey's payment for the land, and is subsequent to any date indicated for the transaction between Henry Cravey and W. S. Frazier in which Cravey's claim must have originated.

Next, concerning the *northern* line of the 30 acre tract in suit: The earliest definite date is that of the deed from W. S. Frazier and wife to W. T. Moulder, namely, April 7, 1905, in which this line is defined by stakes and bearing trees. There is testimony that some two or three years before, W. S. Frazier and W. T. Moulder (Frazier's son-in-law) had approximately determined the location of this line, not by a survey but by pacing off the dimensions of the tract, or at least some of the dimensions. Charley Frazier, son of W. S. Frazier and present on the occasion, testified concerning this that W. T. Moulder wanted more land than Henry Cravey had occupied and that W. S. Frazier had agreed to sell him a larger tract. W. T. Moulder married the sister of this witness on September 8, 1901, and this witness testified that a year or so afterwards, W. T. Moulder and wife established their residence in the house which Henry Cravey had built. This would have occurred in 1902 or 1903. The witness testified: "I don't know what their trade was, but I do know I heard him (Moulder) asking about more land,

and that they stepped off the lower end of the survey and he let him have it." The witness testified further that this "stepping off" occurred about 1902 or 1903. There is no proof of an earlier date when it can be said that the *north* line of the 30 acre tract in suit had been located upon the ground. This date is subsequent to any date shown, or exhibited by excluded proof, for the beginning of Henry Cravey's occupancy, or · for the transaction between Cravey and W. S. Frazier in which Cravey's claim must have originated.

It might be thought that the testimony concerning Cravey's claim which has been quoted above, tends to prove that the 30 acre tract was defined when he asserted claim; but this testimony proves nothing of the kind because it is as consistent with a mental projection of boundaries by Henry Cravey as it is with an actual fixing or location of these boundaries upon the ground. Furthermore, if it be thought that this testimony does show that Henry Cravey's boundaries had been located, it *does not satisfactorily show that he had done so more than 10 years prior to the time that he delivered possession to* W. T. Moulder. *This testimony of claim comes from three witnesses*, namely, J. L. Roundtree, the plaintiff, and J. C. Caraway. *Roundtree's testimony does not prove when* Cravey fixed his boundaries—if it proves (as we think it does *not*) that Cravey had *some notion as to where these boundaries were upon the ground.* Roundtree's testimony is based upon a conversation with Henry Cravey, and the witness does not say when this conversation occurred. All Roundtree's testimony does show is that the conversation occurred while Henry Cravey resided upon the land. Roundtree testified further that he did not know when Cravey first went there, nor how long Cravey had lived on the land. He testified further that W. T. Moulder was the first man who had shown him the boundaries. He testified further that he had been to Henry Cravey's residence two or three times, or perhaps three or four times, while Cravey lived there; but he never did say when these incidents occurred. According to him, Gravey did know the location

of the corners. He testified, for instance, that "the first Sunday after I moved on the land (which, according to other testimony of his occurred a few days after the date of the deed to him, April 23, 1906) Henry Cravey came over there; and we took our guns and walked around it, and shot some squirrels." Further: "He showed me the corner that had bearing trees to it (according to his deed, at least 2 corners of the 30 acre tract were fixed by 2 bearing trees each and another, the northwest, was fixed by 1); and most of the corners were rich lighters. They came out, he said, from the heart of a tree and they were driven down good and solid." However, there is nothing in the proof to show *when* Henry Cravey acquired his knowledge of the location of these boundaries and corners; the knowledge he exhibited to Roundtree after Roundtree had purchased the property from W. T. Moulder in April, 1906 does not tend to show when the corners were marked.

██ . These comments summarize such proof as there is concerning Henry Cravey. Concerning the successors of Cravey in occupancy, we need say only that there is proof that some person or persons resided upon the land without any substantial break in occupancy during the period beginning with Henry Cravey's erection of his dwelling and ending with a year or so after this dwelling burned; plaintiff testified that the structure burned about 1921 or 1922, and that during each of the next two years some one cultivated a garden upon the property with his consent. Henry Cravey was succeeded by W. T. Moulder and wife, the son-in-law and daughter of W. S. Frazier, apparently about 1902 or 1903, according to the proof summarized above, and they by the various persons in the chain of title under them, such persons either residing upon the land or else occupying the same through tenants during this period. Beginning with the said W. T. Moulder, he and each of said persons in the chain of title beginning with him and ending with plaintiff has claimed the 30 acres in suit under deeds duly registered; and plaintiff paid the taxes annually before delinquency beginning in 1908 and continuing uninterruptedly up to and including 1929. In short, if the proof concerning the occupancy and claim of W. T. Moulder and his successors in title was *considered alone*, and without reference to defendant's deed of June 9, 1902, to W. S. Frazier, or the balance of this record, it would raise the issue for the jury that plaintiff had title to the land under both Arts. 5509 and 5510, R.S.1925. It is true that defendant has made deeds to other parties which would otherwise segregate the mineral estate from the surface estate, but all of these other deeds were made many years after W. T. Moulder's possession and claim began, and thus were of no effect against that possession. If a segregation of the mineral estate in suit from the surface estate has occurred, which binds plaintiff and defeats his limitation claim, it must have been effected by the reservation in defendant's deed to Frazier on June 9, 1902.

There is no proof on which to base an equitable partition.

Points 1, 2, 3, 5, and 7 are overruled. Point 7 must be overruled independently of the other points because, as has been stated, no motion for instructed verdict was filed by plaintiff; but Point 7 may also be overruled upon the following grounds, which are the grounds upon which we overrule Points 1, 2, 3, and 5:

(1) The matter of equitable partition is not raised. Too, the proof does not locate the boundaries of those parts of the 30 acre tract in suit which were held in actual possession, that is, the yard and field, and the trial court therefore had only to determine whether the proof showed the requisite possession of the 30 acre tract considered as a whole. Musgrove v. Foster Lbr. Co., Tex.Civ.App., 89 S.W.2d 287. We also think that because of the mineral reservation made in defendant's deed to W. S. Frazier of June 9, 1902 plaintiff had to show that the requisite possession of the 30 acre tract had matured into a limitation title before the date of this deed, or before April 7, 1905, the date of W. S. Frazier's deed to W. T. Moulder, but of this more hereafter.

(2) We have concluded that Henry Cravey's claim originated in a transaction Cravey had with Frazier; and this conclusion raises the question, whether Frazier's possession should be tacked to the occupancy of Cravey. We hold that W. S. Frazier's possession is immaterial on this appeal. If Henry Cravey's occupancy began in 1892, then Frazier's prior possession would add nothing material to plaintiff's case. Indeed, it seems that only 4 years of Frazier's possession would be available for tacking because Frazier had not surveyed his land until 1884, just 4 years earlier. If Henry Cravey's possession began in 1897 or in 1898, then this occurred while suit No. 570 was pending. That suit was filed on Sept. 8, 1896, and defendant therein was served with citation on Sept. 14, 1896, and thereafter answered. Judgment that the plaintiff there, W. S. Frazier, take nothing and that said defendant, the Texas Pine Land Association, recover the Brooks League and particularly the 160 acres for which Frazier sued, was rendered on Sept. 26, 1899. Under the common law rule, then in force, Henry Cravey was charged with notice of the pendency of No. 570 and was at least prima facie bound by the judgment. See: 28 Tex.Jur. 310 (Sec. 3), p. 330 (Secs. 19, 20), p. 337. Secs. 23, 24, 25). If Cravey's claim originated after judgment was rendered in 1899 then of course he could have gotten nothing material from Frazier. The three possible dates just listed for the beginning of Henry Cravey's occupancy are the only ones suggested by the proof.

(3) We accordingly turn to a consideration of the proof upon an assumption that the Cravey claim is to be treated as an original claim. On this basis, the proof does not show that Henry Cravey matured a limitation title to the 30 acre tract prior to June 9, 1902, the date of defendant's deed to W. S. Frazier, or prior to the time Moulder succeeded Cravey in possession, because it does not show that he had the requisite possession of the 30 acre tract.

The first matter to be noted here is the lack of clear proof that W. S. Frazier abandoned to Henry Cravey the full 30 acre tract in suit; apparently Moulder, who took a conveyance of the 30 acre tract, got more land than Cravey had, and thus it does not appear that Henry Cravey had exclusive possession of the 30 acres. But the other matters now to be mentioned show that Cravey did not have the requisite possession of the 30 acres.

As has been stated, there is no proof of any deed to Henry Cravey and since his occupancy must have begun in 1892 or in 1897 or 1898, (according to the proof admitted) then he must have matured title if at all under the statutes of adverse possession which are now expressed in Article 5510, R.S.1925, namely, Articles 3194 and 3195, R.S.1879 and Articles 3343 and 3344, R.S.1895.

Henry Cravey's actual possession was limited to two small parts of the 30 acre tract and it cannot be said that he had the requisite possession of the entire 30 acre tract unless, under the 160 acre provision of the statute cited, he be credited with a constructive possession of all of the 30 acres lying beyond the boundaries of his actual possession. But Henry Cravey could not have had this constructive possession of the 30 acre tract unless he claimed the entire 30 acres, and of course the proof had to show the existence of this claim and that he had asserted and maintained this claim throughout the entire 10 year period prescribed by the statutes cited above. Louisiana & Texas Lbr. Co. v. Kennedy, 103 Tex. 297, 126 S.W. 1110; Louisiana & Texas Lbr. Co. v. Stewart, 61 Tex.Civ.App. 255, 130 S.W. 199, 202; Durham v. Houston Oil Co. of Texas, Tex.Com.App., 222 S.W. 161; Houston Oil Co. v. Holland, Tex.' Com.App., 222 S.W. 546; Houston Oil Co. v.' Ainsworth, Tex.Com.App., 228 S.W. 185; Bartee v. W. T. Carter & Bro., Tex. Civ.App., 100 S.W.2d 378.

It was not enough for him only to have defined or located the limits of the 30 acres in his mind; he must, at least, have known some reasonably close approximation (we assume without deciding, that this would be enough) of the location on the ground of the boundaries of the 30 acre tract as it lay upon the tract of which it was also a part, namely, the 160 acre survey made

by W. S. Frazier in 1884, and he must have asserted claim to those limits. For instance, it is held that a claim to 160 acres undefined except as including claimant's improvements, will not support a judgment for a specific tract except upon allegation and proof that the specific tract represents an equitable partition. Louisiana & Texas Lbr. Co. v. Kennedy, 103 Tex. 297, 126 S.W. 1110. Such authorities as we have seen require that the claimant must otherwise have somehow defined the specific tract upon the ground and thereafter have claimed it, as thus defined, for the statutory period. Thus in Louisiana & Texas Lbr. Co. v. Kennedy, 103 Tex. 297 at page 303, 126 S.W. at page 1114, the court said that the claimant "must set up in his answer the boundaries to which he has made claim with such certainty as would be sufficient to support a judgment in his favor, and also prove the *occupancy* of the land *so described* for the period of time necessary to establish his right". And further: "Kennedy in his petition claimed title to a definite portion of the original survey No. 56, setting out the field notes of his claim, and it was necessary for him to prove that he *occupied the land described* in his petition for 10 years prior to the institution of the suit in order for him to recover in that case." Unless claimant has located the boundaries of his claim upon the ground, he generally would not be able to allege them in his petition and would not be able to prove that he had "occupied" this tract. Furthermore, it seems paradoxical to say that one has *occupied* a tract which has not been defined upon the ground and which exists as a segregated unit only in his own mind. In Oliver v. West Lumber Co., Tex.Civ.App., 287 S.W. 100, at page 102 this court said: "However, if such occupant claims a specific 160 acres he must sufficiently describe same in his plea to identify it, and must prove his open and notorious adverse possession and claim for and during ten years prior to the institution of the suit of the identical 160 acres so claimed and described." In Lutcher v. Grant, Tex.Civ. App., 143 S.W. 1190, 1191, claimant established possession, and claimed 160 acres. He knew where his northern and southern boundaries lay but testified as follows concerning his eastern and western boundaries: "I have been living there on that land all the time and making those improvements, because I claimed it as my home. I have been claiming 160 acres. I have claimed this 160 acres (the land described in the petition) about all the time I have been there the last time since 1875. * * * As to whether I did not know the metes and boundaries of my land before I had it run out, will say that I claimed 160 acres. I knew the southern boundary of my claim and the northern boundary. I didn't know the others exactly." Less than 10 years before the suit was filed, he had his claim surveyed. The trial court instructed the jury that claimant had not shown an adverse claim for 10 years to the specific 160 acres alleged by him, and required a finding that this tract represented a proper partition. A verdict for claimant was returned and on this verdict, a judgment was rendered for claimant for the 160 acre tract. The Court of Civil Appeals affirmed this judgment and in discussing the sufficiency of the proof to show a claim beyond the actual possession (which covered only some 35 acres) held: "This testimony is sufficient to support the finding that the defendant has been continuously claiming 160 acres of the land, including his improvements, and, under the rule established by the cases of Louisiana & Texas Lumber Co. v. Kennedy, (103 Tex. 297), 126 S.W. 1110, and Louisiana & Texas Lumber Co. v. Stewart, (161 Tex.Civ.App. 255), 130 S.W. 199, would entitle him to 160 acres of land out of the tract on which his settlement was made. The trial court instructed the jury that defendant had not shown an adverse claim for 10 years to the specific 160 acres claimed by him in this suit, and that they could not find in his favor for said 160 acres, unless they found that the survey made so segregated the 160 acres claimed by him as not to materially injure the shape of the larger tract, and that said 160 acres was of equal value with the balance of the larger tract. The appellants do not contend that the evidence does not

sustain the finding of the jury that the partition of the land made by the defendant by his survey of 160 acres was fair and equitable. Such being the state of the record, the second assignment of error cannot be sustained." This holding necessarily implies that the claimant's testimony did not support a finding of *claim to the specific 160 acre tract surveyed,* because proof of claim to an undivided 160 acre tract is inconsistent with a claim to a specific tract; and we note furthermore that claimant's testimony in the case is about the equivalent of that concerning Henry Cravey's claim which we have quoted above.

The proof does not show that Henry Cravey claimed the 30 acre tract for the statutory 10 year period because it does not show that the lines of the 30 acre tract were located, or placed, or fixed, or were in existence on the ground during Henry Cravey's occupancy. Our discussion of the proof shows that two of these boundaries, the western and northern, had to be located either by or for Henry Cravey because it must be assumed under the proof that when Henry Cravey went upon the land the only tract thus defined was the 160 acre claim of W. S. Frazier.

As a consequence, the proof does not show that Henry Cravey had the requisite possession for the 10 year period of the land in suit.

(4) If it be assumed, contrary to what we have just decided, that there is some proof of a limitation title in Henry Cravey, matured by him prior to June 9, 1902, the date of defendant's deed to W. S. Frazier, or prior to the date Moulder succeeded to Henry Cravey's possession, if that occurred prior to said deed, the plaintiff cannot take advantage of this limitation title because plaintiff asserts title through W. T. Moulder, who succeeded Henry Cravey in possession, and there is no proof of any conveyance by Cravey to Moulder (or by Cravey to W. S. Frazier, who did make a conveyance to Moulder) sufficient to comply with the Statute of Frauds, namely, Sec. 3, Art. 3995, R.S. 1925, or of the Statute of Conveyances, namely, Art. 1288, R.S.1925.

The only evidence concerning a transfer from Henry Cravey to Moulder was that of J. L. Roundtree, as follows: "I don't know how long Cravey lived on the land; and as to what he did with it, he let Moulder have it." Further: "Henry Cravey sold the place to Moulder to the best of my knowledge. I couldn't say when that was". We have mentioned the testimony of J. C. Caraway and of Charley Frazier, concerning a purchase from Frazier by Henry Cravey. None of this testimony proves a conveyance which complies with the statutes cited.

Nor does the proof show an enforcible parol sale of a limitation title. Moulder did take possession of the property, but there is no evidence of what the purchase price was and no competent evidence that the price was paid. Roundtree's testimony that Henry Cravey "sold the place" to Moulder does not prove that Moulder ever paid Cravey the purchase price; Cravey may have "sold" on credit. Furthermore, the proof concerning the erection of valuable improvements is indefinite and incomplete. The only witnesses who referred to this matter were Kirkpatrick and plaintiff. The witness Kirkpatrick, having testified to the erection of various improvements by Henry Cravey, testified further:

"Q. Was there anything further done to the house by Moulder by way of adding to it or tearing it down? A. He may have; he could have, but I don't recall it.

"Q. Your testimony is you don't know whether he did or not? A. That's right.

"Q. —did Moulder build any new fences around there? A. Not that I know of." Plaintiff testified that he did not recall exactly when Moulder lived on the land. He said: "It must have been about 1903. I was in and out of there. I traded some with Mr. Moulder about that time; I was doing some trading with W. S. Frazier and I passed the house every once in a while.

"Q. And Mr. Moulder was living there? A. Yes, and I stopped there once * * * he had not been living there long; long

enough to *build a little to the house, and I got out and looked at that.*—He said he had a home he was going to keep, fix it up." Roundtree never described Moulder's addition to the house, and there is no other proof concerning it; and there is no proof at all of the value of Moulder's addition to the house, and nothing to show the proportion it bore to the value of the land and improvements into which Moulder entered. According to the statement quoted, Moulder's addition to the house may have been trivial, done at insignificant cost and with small effort. The burden of proof was on the plaintiff to show a valid parol sale, or an effective conveyance of the land if a limitation title vested in Henry Cravey before Moulder succeeded to the possession; and if he depended upon a parol sale, he had the burden of proving, among other elements, the fact that Moulder erected valuable and permanent improvements upon the land on the strength of a sale to him by Cravey. The various requirements to effect a parol sale are stated in Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216. Concerning improvements it was held in Lodge v. Leverton, 42 Tex. 18, at page 25: "Unquestionably, if a verbal contract is to be enforced upon the ground of improvements made by the purchaser, the time and circumstances under which the improvements were made, *and an approximate estimate at least of their value, should be shown.*" And it was held further: 42 Tex. at page 25 "Nor can it be maintained that any character of improvements or repairs made on the premises, of however little value, will entitle the purchaser to have the contract." The rule concerning the burden of proof has been adhered to, and it has been held in a number of cases that the erection of improvements which were of trivial value or cost, or of little value in comparison with the value of the land, did not meet the requirements that permanent and valuable improvements be erected. See concerning the basic requirement and the other matters mentioned: Cobb v. Johnson, 101 Tex. 440, 108 S.W. 811; Bradley v. Owsley, 74 Tex. 69, 11 S.W. 1052; Eason v. Eason, 61 Tex. 225; Davis v. Douglas,

Tex.Com.App., 15 S.W.2d 232; Baker's Executors v. De Freese, 2 Tex.Civ.App. 524, 21 S.W. 963; Wallis v. Turner, Tex. Civ.App., 95 S.W. 61; Lechenger v. Merchants' Nat'l Bank, Tex.Civ.App., 96 S.W. 638, 639, at page 643; Hutcheson v. Chandler, 47 Tex.Civ.App. 124, 104 S.W. 434, 435; Baldwin v. Riley, 49 Tex.Civ.App. 557, 108 S.W. 1192; Cook v. Erwin, Tex. Civ.App., 133 S.W. 897; West v. Webster, Tex.Civ.App., 87 S.W. 196; Newcomb v. Cox, 27 Tex.Civ.App. 583, 66 S.W. 338; Houston Oil Co. v. Gore, Tex.Civ.App., 159 S.W. 924; Jones v. Male, 26 Tex.Civ. App. 181, 62 S.W. 827; Atchley v. Perry, 55 Tex.Civ.App. 538, 120 S.W. 1105; Elam v. Carter, 55 Tex.Civ.App. 649, 119 S.W. 914; Garza v. Martinez Mercantile Co., Tex.Civ.App., 208 S.W.2d 567.

■ All of these matters must be considered in support of the trial court's judgment. 3–B Tex.Jur. 280 (Sec. 875).

■ (5) These conclusions justify the instructed verdict if it be assumed that Henry Cravey's possession began in 1892. Furthermore, these conclusions also justify the instructed verdict if Henry Cravey's possession began in 1897 or afterwards. For in the first instance, W. T. Moulder was in the same position as one having nothing to tack to his own possession, in itself insufficient, prior to W. S. Frazier's deed to him, and in the second instance, since less than 10 years would have intervened between the date Cravey's possession began and the date of W. S. Frazier's deed to W. T. Moulder of April 7, 1905, it is of no consequence whether W. T. Moulder acquired the right to tack his possession to that of Henry Cravey. In either case, the reservation which defendant made in the deed of June 9, 1902, to W. S. Frazier bound Moulder and his successors, divided the mineral estate from the surface estate, and limited the possession of Moulder and his successors to the surface, and thus defeated plaintiff's claim of limitation title.

■ The reservation of the minerals which defendant made in the deed of June 9, 1902, to Frazier was effective as between defendant and Frazier. For title to whatever interest Frazier had had in the land

had vested in Texas Pine Land Association in Cause No. 570 (as had Cravey's, if his possession began in 1897 ; and the Association had conveyed its interest to defendant Houston Oil Company by deed dated July 31, 1901. Thus when defendant made the deed of June 9, 1902, to W. S. Frazier, the said Frazier was without title, so far as this record shows, and he was bound by the reservation. Greene v. White, 137 Tex. 361, page 375, et seq. (Hn. 2, 3) 153 S.W.2d 575, 136 A.L.R. 626.

This mineral reservation also took effect against W. T. Moulder when W. S. Frazier conveyed the land in suit to him by deed of April 7, 1905, because Moulder then either had no more title than did Frazier when defendant made the deed of June 9, 1902, to Frazier, or else the proof does not show that he had any title. The decision in Broughton v. Humble Oil & Refining Company, Tex.Civ.App., 105 S. W.2d 480, cited by plaintiff is not in point. Moulder's possession prior to his deed from Frazier was not a title, or was not shown to be a title, and when Moulder took the deed of April 7, 1905, from W. S. Frazier we think that, under Greene v. White, he abandoned his previous possession. Meaders v. Moore, 134 Tex. 127, 132 S.W.2d 256, 125 A.L.R. 817, also cited by plaintiff is not in point; this is not a case of undivided interests. Thus each of Moulder's successors in title, of whom plaintiff is the last, were bound by the reservation; and the possession of the surface by plaintiff and his predecessors in title never reached the mineral estate which is the subject matter of this appeal. Concerning the effect of the reservation upon Frazier's successors in title, see: Waco Bridge Company v. City of Waco, 85 Tex. 320, 20 S.W. 137; Cleveland State Bank v. Gardner, Tex. Com.App., 286 S.W. 173. We have previously mentioned the fact that each deed in the chain of title to the land in suit, beginning with defendant's deed of June 9, 1902 to Frazier was of record when the next succeeding deed was made.

Whether Frazier or any successor in title of his could repudiate the mineral reservation upon acquiring the real title to the land is not before us, because Frazier and his successors have proved no title to the land except one held under defendant. Under the holding in Greene v. White, supra, it was not necessary for defendant to prove any other title, since the reservation was prima facie binding.

Some complaint has been made by the plaintiff of the description in a deed in the paper chain of title which defendant proved, namely, a deed from John P. Irvin to the Texas Pine Land Association, dated December 11, 1891. If the description in this deed is defective, the defect is immaterial because the burden was on plaintiff to prove his own title; and we have held that he failed to do so. Too, it must be noted that in Cause No. 1827 in the district court of Hardin County, styled Edith L. Niles, et al. v. Houston Oil Company, judgment was rendered in behalf of defendant for a part of the Brooks League which includes the land in suit; and the adverse parties, according to proof before us, held the senior paper title to the land. According to the opinion of this court, reported at 288 S.W. 614, defendant had title by adverse possession and also on the ground that the aforesaid John P. Irvin, whom defendant then asserted and now asserts to be a link in defendant's title, was an innocent purchaser. Therefore it seems that defendant, at least prima facie and as against the plaintiff, acquired the real title to the land and now holds the same, except as the operation of the warranty in defendant's deed of June 9, 1902, perfected the title purportedly conveyed by that deed; and there is nothing to show that plaintiff has any connection with this title or with John P. Irvin unless he acquired it by virtue of adverse possession.

Point 4 asserts that the trial court erred: "In holding that defendant was shown by the evidence to own the record title." The subject matter of this Point is immaterial since, the burden of proof was on the plaintiff, not on defendant.

Point 6 asserts that the trial court erred "in holding that defendant's possession through S. A. J. Hare as its tenant prevented plaintiff from maturing the lim-

itation title." The subject matter of this Point is immaterial under the conclusions already stated.

Point 8 assigns as error the trial court's exclusion of papers filed and proceedings had in Cause No. 2239 in the district court of Hardin County, styled W. S. Frazier v. Houston Oil Company. The excluded proof may be summarized as follows:

W. S. Frazier and wife were plaintiffs in this cause and the defendant here was the defendant there. The suit was filed on April 10, 1912, nearly five years after plaintiff's claim of title originated with the deed to plaintiff from T. C. Cravey and wife dated July 7, 1907.

In No. 2239, Frazier and wife sued in trespass to try title to recover a tract described by metes and bounds, alleged to contain 160 acres, and which, as described, contained the land in suit. They specially pleaded title by adverse possession; and the parties went to trial on an agreement which was filed October 9, 1912 that "the record title to the land in controversy is in defendant unless divested out of defendant by limitation". Plaintiff's brief quotes a more elaborate agreement, taken apparently, from the opinion of the Galveston Court of Civil Appeals; but the agreement filed in and acted upon by the trial court was the short one just quoted. It must be assumed that this agreement was made on the date on which it was filed, since there is no other proof of when it was made. The date of filing was *more* than five years later than the date of Cravey's deed to plaintiff.

Judgment was rendered on October 16, 1912 (3 days after the aforesaid agreement was filed) that defendant recover the land from the plaintiffs, less, however, a 12 acre tract which included the improvement of Frazier's. The 12 acre tract is not a part of the land in suit.

This judgment was affirmed by the Galveston Court of Civil Appeals in an opinion reported at 161 S.W. 20.

It seems to be plaintiff's position that the agreement filed in this suit No. 2239 was an incident of, and proves a rescission by W. S. Frazier and defendant of the transaction which the same two parties had memorialized in defendant's deed of June 9, 1902 to W. S. Frazier, containing the mineral reservation; and that by virtue of this rescission the reservation was abated and is to be given no effect on this trial.

Point 8 is overruled. The agreement made and acted upon in No. 2239 is certainly inconsistent with the assertion by W. S. Frazier and wife of any title under defendant's deed of June 9, 1902, and is certainly inconsistent with a limitation of defendant's claim of title to the minerals reserved in that deed. But the record affords no explanation for this agreement, and whether the agreement was a consequence of such a rescission, or of something else, cannot be determined. The agreement was not in accord with the facts, for the Fraziers had made at least two conveyances to other parties before they filed No. 2239. One of these was a deed to H. S. Kirby dated August 2, 1904, conveying 19 acres off the north end of the 80 acre tract; and the other was the deed to W. T. Moulder by Frazier and wife dated August 7, 1905, conveying the land in suit. And there is nothing whatever in the record to show that defendant has ever asserted title to the surface of the land in suit since June 9, 1902, the date of defendant's deed to W. S. Frazier. The excluded proof seems completely ambiguous. However, it was immaterial. Only the Fraziers and the defendant were parties to No. 2239. There is no evidence that plaintiff was a party, directly or by representation, to the agreement under discussion, or that plaintiff knew anything of No. 2239. Nor is there any proof that the agreement was intended to bind plaintiff to his loss, or was intended for his benefit. We have not been able to perceive how parties acting independently of plaintiff and not for his benefit could be said, in effect, to have conveyed a mineral estate to plaintiff. A somewhat different contention was made by plaintiff and was overruled by the Court of Civil Appeals in Reeves v. Republic Production Co., 177 S.W.2d 1011, page 1013 (Hn. 4);

but plaintiff's present agreement is inconsistent with the judgment rendered in that case.

Furthermore, if the agreement is to be enforced here, it would have to be completely and literally enforced, and this would result in plaintiff's loss of title even to the surface of the land, for his argument would put title in defendant except as divested by Frazier's limitation, and this failed except as to 12 acres which is not involved here. Still further, enforcement of this agreement implies that Henry Cravey's possession was not exclusive of W. S. Frazier. Point 8 seems inconsistent with plaintiff's other arguments.

■ Point 9 assigns as error the trial court's refusal to admit a portion of the decree rendered in Equity, Cause 54, in the U. S. Circuit Court, Southern District of Texas, styled Maryland Trust Co., Trustees v. Kirby Lbr. Co., et al. Point 9 is overruled. The document affects only defendant's title; and we have held that plaintiff failed to prove title, thus making this document immaterial. Furthermore, the 80 acre tract conveyed to W. S. Frazier by defendant's deed of June 9, 1902, which contains the land in suit, was specifically excepted by paragraph 4 of this decree from the land acted upon by said decree. We cannot agree that this exception represented a disclaimer of title to the mineral reservation in defendant's deed of June 9, 1902, to W. S. Frazier. Furthermore, according to the 5th paragraph of said decree defendant retained an interest in the title to the lands acted upon by said decree.

■ Point 10 assigns as error the action of the trial court in excluding answers of J. C. Caraway to certain interrogatories addressed to him on deposition. The proof excluded has been mentioned. It is not in the statement of facts or in an independent bill of exceptions; it appears only by way of recitation in plaintiff's briefs or as an exhibit attached thereto, and for the reason that this proof is not in the record, if for no other, Point 10 must be overruled. However, Point 10 is not good on the merits. Plaintiff seemingly offered the excluded testimony to show that the judgment in No.

570 was rendered in violation of a compromise agreement between W. S. Frazier and the Texas Pine Land Association that No. 570 would be dismissed and that the Association would convey 80 acres to Frazier, apparently in fee. This testimony is immaterial. It cannot affect the judgment rendered in No. 570, which is not under attack. It seems to be plaintiff's theory that it affords some explanation for the proceedings had in Frazier's subsequent suit No. 2239, Frazier v. Houston Oil Co., and tends to show that No. 2239 represented an agreed rescission. However, the proceedings had in No. 2239 are inconsistent with the agreement shown by Garaway's excluded testimony; had such an agreement been made, it would seem that the parties would have *performed* this agreement. This could have been done very easily by defendant's releasing the mineral reservation in that deed. The record actually contains no explanation for the agreement filed in No. 2239, unless we are to infer that the agreement was made to expedite the trial of No. 2239.

■ Point 11 assigns as error the trial court's action in excluding certain answers by J. L. Roundtree to interrogatories addressed to him on his deposition. Among the interrogatories to which Point 11 seemingly refers was the following: "Q. (10-e) Did Moulder give you when you bought from him any paper showing he had bought the place from Henry Cravey? (f) What became of that paper and what was it?" The answer to this interrogatory is not in the record. None of the other testimony excluded is material, at least in view of our conclusion that Henry Cravey's claim originated in a transaction he had with W. S. Frazier.

Point 11 is overruled.

These comments dispose of all Points of Error assigned. The judgment of the trial court is affirmed.

### On Motion for Rehearing

■ Plaintiff has filed a motion for supplemental findings of fact and conclusions of law. The motion is overruled. Nothing but a statement of the relevant

proof would be proper in determining whether a motion for instructed verdict had properly been granted, and all of our "findings" which bear upon the instruction of a verdict for defendant are to be construed as such a statement of proof. We think our statement correct and complete.

Plaintiff has also filed a motion for rehearing. This motion has been considered but is overruled.

On re-reading the opinion, we note that on page 9 thereof [230 S.W.2d 262] we seem to have given J. C. Caraway's testimony concerning a statement to him by Henry Cravey, describing Henry Cravey's purchase of and payment for the land, as being legal proof of the fact that Cravey did so purchase and did so pay for the land. In this aspect, the testimony of Caraway would be hearsay and therefore incompetent. However, this does not defeat our conclusion that such proof as we perceive in the record shows Cravey to have acquired his possession upon the land from W. S. Frazier. The reference at the top of page 10 of said opinion [230 S.W.2d 262] to Caraway's excluded testimony of the date when Houston Oil and Kirby succeeded to Pine Land Association's operations serves no function, is improper, and is withdrawn.